In re SMITH & WEST CONSTRUCTION, INC., dba Smith & West Construction & Engineering; S & W Construction & Engineering, Debtor.

Paul LANSDOWNE, Trustee, Plaintiff,

v.

SECURITY BANK OF COOS COUNTY, Defendant.

Bankruptcy No. 681–06390.
Adv. No. 682–7170.

United States Bankruptcy Court,
D. Oregon.

Feb. 4, 1983.

Keith Boyd, Eugene, Or., for plaintiff.

Martin Stone, Coquille, Or., for defendant.

### OPINION, FINDING OF FACT AND CONCLUSIONS OF LAW

C.E. LUCKEY, Bankruptcy Judge.

The plaintiff-trustee, Paul Lansdowne, seeks determination of the validity of a lien

asserted by defendant, Security Bank of Coos County (Bank), in a 1976 Ford pickup truck registered to Smith and West Construction, Inc., the debtor herein. The parties have submitted the matter on cross-motions for summary judgment and both contend that there is no genuine issue as to any material fact. The facts as set forth in the affidavits and supporting documentation accompanying the parties' motions reveal the following:

Defendant Bank and the debtor entered into a security agreement (Exhibit "A–1" to defendant's motion) dated September 25, 1980, covering the 1976 Ford pickup truck as collateral and securing a promissory note dated September 25, 1980, in the principal sum of $1,753.17. On April 21, 1981, the debtor executed a promissory note to the Bank in the principal sum of $9,557.74. A second security agreement (Exhibit "A–3" to defendant's motion) was executed on April 21, 1981, covering collateral consisting of one 1965 Peterbilt off-road equipment truck, one 1951 auto car off-road fire truck and miscellaneous equipment attached to both trucks. An additional loan evidenced by a third promissory note in the sum of $1,032.93 was executed by the debtor in favor of the Bank on May 7, 1981, and a third security agreement (Exhibit "A–5" to defendant's motion) covering a 1977 Chevrolet ½ ton pickup truck as collateral was executed on May 7, 1981.

On or about October 7, 1981, the defendant received payment from the debtor of a sum of money sufficient to pay off the balance remaining unpaid on the September 25, 1980, promissory note, but outstanding balances remained due the Bank on other loans. The defendant Bank was in possession of the certificate of title for the 1976 Ford pickup truck (Exhibit "A–2" to defendant's motion) with its security interest in the vehicle duly noted thereon. Defendant's signature was placed on the certificate of title to the 1976 Ford pickup on October 8, 1981, on signature line 4, "signature of security interest holder releasing interest", this was done neither in the presence of a representative of the debtor nor at the request of the debtor. Defendant's procedure for verification of the satisfaction of the debtor's indebtedness to the defendant Bank revealed the outstanding indebtedness arising from the other promissory notes discussed above. Defendant elected to retain the 1976 Ford pickup as collateral for the subsequent loans to the debtor, which were delinquent, and defendant Bank never delivered the certificate of title to the 1976 Ford pickup to the debtor or anyone else. Defendant asserts an outstanding loan balance as of August 2, 1982, of $10,037.17 due from the debtor.

The defendant Bank contends that the provisions of the September 25, 1980, security agreement between it and the debtor effectively secure the subsequent advances made by the defendant to the debtor by the 1976 Ford pickup truck. Defendant's counsel cites the definition of the indebtedness, the payment of which is secured by the 1976 Ford pickup contained in the security agreement at paragraph 1.1 which provides:

"1.1 Indebtedness. 'Indebtedness' shall mean all amounts now or hereafter owed by Borrower to Bank, whether or not evidenced by a promissory note or notes and whether direct, indirect, or contingent."

Defendant Bank asserts that the terms of the security agreement evidence an intent that it cover future advances. Future advance clauses are valid in Oregon. O.R.S. 79.2040(3). In order for future indebtedness to be secured by a future advance clause in the initial security instrument, Oregon law requires that the subsequent debt "be of the same class as the primary obligation . . . and so related to it that the consent of the debtor to its inclusion may be inferred." *Community Bank v. Jones,* 566 P.2d 470, 482, 278 Or. 647 (1977). The record before the Court in the instant case reveals that all of the debtor's indebtedness to the defendant arose from loans to the debtor which were evidenced by promissory notes. The advances, made by the Bank to a corporate debtor engaged in the construction business, all appear to be of a business or commercial nature. Nothing offered by either party indicates that the

subsequent additional obligations were not of the "same class" as the initial indebtedness. The existence of subsequent separate security agreements covering the additional indebtedness and providing additional collateral security does not affect the coverage of those advances by the initial security agreement. *Sturdevant v. First Security Bank of Deer Lodge,* 606 P.2d 525, 527 (Mont.1980).

The trustee contends that the defendant's signature on the release provision on the certificate of title to the 1976 Ford pickup truck constitutes a binding release by the defendant of any interest it has in the truck, relying on O.R.S. 79.4060 and O.R.S. 481.410(2).

O.R.S. 79.4060 provides:

"79.4060 Release of collateral; duties of filing officer; fees. A secured party of record may be signed statement release all or a part of any collateral described in a filed financing statement. The statement of release is sufficient if it contains a description of the collateral being released, the name and address of the debtor, the name and address of the secured party, and the file number of the financing statement. A statement of release signed by a person other than the secured party of record must be accompanied by a separate written statement of assignment signed by the secured party of record and complying with O.R.S. 79.-4050(2), including payment of the required fee. Upon presentation of such a statement of release to the filing officer the filing officer shall mark the statement with the hour and date of filing and shall note the same upon the margin of the index of the filing of the financing statement. The uniform fee for filing and noting such a statement of release shall be $3.75 if the statement is in the standard form prescribed by the Secretary of State and otherwise shall be $5, plus in each case an additional fee of $3.75 for each name more than one against which the statement of release is required to be indexed. [1961 c. 726 § 79.4060; 1971 c. 621 § 16; 1973 c. 504 § 29; 1975 c. 607 § 18; 1979 c. 833 § 19; 1981 c. 835 § 9]"

The trustee's contention that satisfaction of the requirements of O.R.S. 79.4060 other than the filing of the release constitutes an effective release by defendant of its interest in the 1976 Ford pickup appears unsupportable and to be a distortion of the meaning, purpose and applicability of O.R.S. 79.-4060. Security interests and their termination relating to titled motor vehicles are governed by Chapter 481 O.R.S. under the provisions of the Oregon Uniform Commercial Code.

The trustee contends that O.R.S. 481.-410(2) provides that once a secured party has signed a release, his rights with respect to the collateral are terminated and that the formerly secured party is under an obligation to deliver the certificate of title to the debtor. This construction represents a misinterpretation of the provision of O.R.S. 481.410(2), which provides:

"(2) *Upon satisfaction of a security interest* in a vehicle for which a certificate of title has been issued, the security interest holder affected, if in possession of the certificate of title, shall sign and date a release on the certificate and deliver it to the security interest holder next named, if any, otherwise to the lessor or, if none, to the owner. In the event the security interest holder affected is not in possession of the certificate the security interest holder shall execute and date a release of interest and deliver it to the person entitled thereto who shall promptly deliver it to the holder of the certificate of title. Within 30 days after the date of the release, the holder shall present the certificate of title and release, with a fee of $7, to the division. The division thereupon shall note the change upon its records and issue a new certificate of title to the first security interest holder then named, if any, otherwise to the lessor or, if none, to the owner." [Emphasis Added]

Satisfaction of a security interest in a vehicle covered by a certificate of title is a prerequisite to the application of O.R.S. 481.410(2). At no time was the defendant's security interest in the 1976 Ford pickup truck satisfied as it served as collateral for loans which at no time were completely

paid off. The trustee's position that the mere signature of the defendant on the certificate of title served to release the defendant's interest in the 1976 Ford pickup truck is unsupportable. The trustee has cited no cases in support of his position and the Court has found none.

The uncontradicted affidavit in support of the summary judgment on motion by the defendant asserts the intention of the defendant that the clause in the security agreement for sums "hereafter owed" is to obligate the 1976 Ford pickup as a continuing security for subsequent loans to the debtor. The debtor has not by affidavit or conduct manifested any different intention. See *Security National Bank v. Dentsply Professional,* 617 P.2d 1340, 1345 (Okl.1980).

Accordingly, the Court finds that the defendant Bank has a valid perfected security interest in the 1976 Ford pickup truck. Each party shall bear its own costs and attorney fees in these proceedings.

This Opinion contains the Court's finding of Fact and Conclusions of Law and pursuant to Bankruptcy Rule 752 they shall not be separately stated. Separate judgment consistent herewith will be entered.