**RICHLANDS NATIONAL BANK,**
**Plaintiff,**

v.

**Morris Don SMITH, et al., Defendants.**

**Civ. A. No. 83–0298–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Oct. 28, 1983.

C.R. Bolling, Richlands, Va., W.D. Jackson, Bristol, Tenn., for plaintiff.

C. Adrian White, James E. Nunley, Bristol, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff (appellant), Richlands National Bank, appeals from a decision of the United States Bankruptcy Court for the

Western District of Virginia holding that the plaintiff in this Chapter 13 case was not a secured creditor. The question presented to this court is whether the plaintiff has perfected liens on two trucks when the plaintiff has obtained a security interest in these vehicles and noted the facts of its lien on the certificates of origin but the lien is not recorded on the face of a new certificate of title prior to the filing of a petition in bankruptcy. For the reasons given below, the court affirms the decision of the Bankruptcy Court.

## I. FACTS

On November 2, 1982, the defendants Morris Don Smith and Velma Sue Smith, purchased and took possession of two trucks, a 1982 Ford pickup truck and a 1982 Ford LT 9000 coal truck, from Mullins Ford, Inc. Concurrent with the purchase, these defendants executed an installment sale security agreement to Mullins Ford, which later assigned its right, title and interest in the security agreements and notes to Richlands National Bank. The agreement was documented on the back of the certificate of origin of each vehicle. Under the purchase contract, the cash price term for both vehicles was $104,300. The Smiths deposited a down payment of $14,000, leaving an unpaid balance of $90,300. Insurance and financing charges brought the total payment due to $111,609.36, which was to be paid over a twenty-four month period at $4,650.39 per month beginning December 2, 1982. No payments had been made as of May 24, 1983.

The Smiths filed their petition in bankruptcy on December 14, 1982. At that time, over thirty days after the date of purchase, neither certificate of origin which was in the defendants' possession, had been sent to the Division of Motor Vehicles (DMV). On January 24, 1983, the DMV issued a certificate of title for the 1982 Ford coal truck, evincing the plaintiff's security interest on its face. This action was taken without leave of the Bankruptcy Court. Defendants have not applied to the DMV for a certificate of title for the 1982 pickup truck.

A Chapter 13 plan submitted by the defendants on November 30, 1982 proposed to pay the plaintiff one-half of the regular monthly payment for six months (approximately $2,350) beginning April 1, 1983 and then the regular monthly payment ($4,650.39) until the amount was paid in full. Richlands National Bank was not listed as a secured creditor although the plaintiff listed itself as such in the proof of claim filed February 11, 1983, objecting to confirmation of the plan.

The plaintiff then sought relief from the automatic stay provision of 11 U.S.C. § 362(a), alleging that the actions of the defendants in refusing to apply for certificates of title properly showing the Bank's liens, failing to maintain insurance coverage on the vehicles, and proposing periodic payments under the plan which would not protect its interest in view of the truck's substantial depreciation during coal haulage, demonstrated the lack of adequate protection required under 11 U.S.C. § 362(d)(1) to lift the stay. The defendants asserted that the Bank did not have a properly perfected lien in either truck and thus was not a secured creditor. An adequate protection hearing was held March 22, 1983, and the Bankruptcy Court confirmed the Chapter 13 plan April 15, 1983. The plan provides that the Bank shall retain its lien until the claim of $111,609.36 is satisfied.

Then, by a memorandum opinion and order dated May 24, 1983, the Bankruptcy Court concluded that the plaintiff was an unsecured creditor. Judge Pearson based his decision upon the precedents of *In re McCroskey,* 19 U.C.C.Rep. 1394 (W.D.Va. 1976) and *In re Smith,* 311 F.Supp. 900 (W.D.Va.1970), aff'd. 437 F.2d 898 (4th Cir. 1971). The Bankruptcy Judge, anticipating an appeal, ordered that the defendants Smiths escrow with the trustee the contract sum of $4,650.39 for crediting to the Bank's claim with the monthly payments to begin June 1, 1983.

## II. DISCUSSION

The plaintiff contends that it is a secured creditor. Its assertion rests on a theory

that under the laws of Virginia, the purchaser has the duty to send the certificates of origin to the DMV and to apply for new certificates of title within thirty days of the date of purchase. Since the legal obligation is upon the purchaser, the creditor has done all it is required to do to protect its security interest by noting the lien on the back of the certificate of origin which the purchaser presumably will send to the DMV. Even though the laws mandate that the lien appear on the face of the certificate of title to properly perfect the security interest, plaintiff argues that the facts of this case fall within an equitable exception made when purchasers fail to secure a certificate of title within the thirty-day grace period and thus plaintiff still holds its secured status. *See Commerce Bank v. Chambers,* 519 F.2d 356 (10th Cir.1975).

■ To determine the plaintiff's status, three inquiries are necessary: (1) whether the security agreement secures the indebtedness as between the Bank and the Smiths; (2) whether the imposition of a Bankruptcy trustee affects the Bank's secured position; and (3) whether the trustee is compelled to take steps to protect the Bank's secured status. The law of the State where the transaction occurred governs the issue of perfection. *Lewis v. Manufacturers Nat. Bank,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961).

■ Every person owning a motor vehicle which is intended to be operated upon a state highway in Virginia shall register and title the vehicle before operating it. Va. Code § 46.1–41 (Repl.Vol.1980). An owner or his authorized attorney has the duty to make application for a certificate of title. Va.Code § 46.1–51 (Repl.Vol.1980). If an application for a certificate of title shows a security interest, the certificate shall show on its face all security interests disclosed in the application in order of their priority. Va.Code § 46.1–69 (Repl.Vol.1980). The intention of the Virginia legislature of enacting this provision was to provide a simple means of ascertaining liens against motor vehicles by statutorily establishing one place to record such liens. *General Credit*

*v. Winchester, Inc.,* 196 Va. 711, 717–718, 85 S.E.2d 201, 204 (1955), quoting *Maryland Credit Finance Corp. v. Franklin Credit Finance Corp.,* 164 Va. 579, 583, 180 S.E. 408, 409–10 (1935). The notation of the security interest on the front of the certificate is deemed to be adequate notice to the Commonwealth, creditors, and purchasers of the existence of such interest. Va.Code § 46.1–71 (Repl.Vol.1980). If the application for recordation of a lien is filed with the DMV within thirty days of the purchase, the lien is valid from the date of the security agreement. Va.Code § 46.1–72 (Repl.Vol.1980). Thus, one purpose of the Virginia Registration Statute is to afford notice to third parties of any outstanding liens against the vehicle. *See Janney v. Bell,* 111 F.2d 103 (4th Cir.1940).

■ Turning to the first inquiry, is the Bank's secured status under the security agreement valid against the Smiths? The Virginia Supreme Court has concluded that even though an owner may not record a security interest and thus does not give third parties notice, nevertheless, the creditor is entitled to rely upon and enforce the security agreement against the purchaser. *Bain v. Commonwealth,* 215 Va. 89, 91, 205 S.E.2d 641, 643 (1974). In this case, the defendant had obtained a loan and assigned his Volkswagen as security for the note. After a couple of payments, Bain defaulted on the note, and when the bank inquired about the car, it learned, to its dismay, that a used car dealer purchased the automobile. Bain subsequently was convicted of fraudulently selling, removing, or disposing of a motor vehicle.

The Fourth Circuit Court of Appeals reached the same conclusion. In *Janney v. Bell,* 111 F.2d 103 (4th Cir.1940), the trustee under a deed of trust had taken possession of some motor vehicles for purposes of sale. Prior to the sale, the debtor filed a petition in bankruptcy and a trustee in bankruptcy was appointed. The Bankruptcy trustee alleged that the deed of trust was improperly recorded in the local clerk's office and that the other trustee wrongfully had possession of the vehicles. The learned Judge Dobie

concluded that there was a valid claim as between the debtor and the trustee under the deed of trust, notwithstanding the strict provisions of the Virginia Motor Vehicle Act. The court interpreted the statutes as recognizing that other unrecorded liens may exist and be enforceable between the contractual parties. *Id.* at 108. *See also Staunton Industrial Loan Corp. v. Wilson,* 190 F.2d 706, 708 (4th Cir.1951); Note, The Protection of Financing Agencies: Automobile Liens, 45 Va.L.Rev. 754, 757–58 (1959).

Accordingly, the lien of the Bank is a valid claim as between the Smiths and the plaintiff.

■ The second inquiry is whether on these facts the Bank holds a lien on the automobile superior to the rights of the trustee under 11 U.S.C. § 544(a). 11 U.S.C. § 544(a) provides in pertinent part that:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;  ....

As the legislative history indicates, the intention of Congress was to incorporate § 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c) in the Reform Act of 1978, and § 544(a) is the "strong arm clause" of current law which "gives the trustee the rights of a creditor in a simple contract with a judicial lien on the property of the debtor as of the date of the petition." S.Rep. No. 989, 95th Cong., 2d Sess. 85, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5871; H.R.Rep. No. 595, 95th Cong., 1st Sess. 370, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6326. The United States Su-

preme Court interpreted the language of § 70(c) to mean "the trustee acquires the status of a creditor as of the time when the petition in bankruptcy is filed." *Lewis v. Manufacturers Nat. Bank,* 364 U.S. at 607, 81 S.Ct. at 349. Congress did not change the Court's decision. Thus, at the filing of the bankruptcy petition the trustee has the status of a judicial lien creditor.

■ If the Bank has a lien superior to a judicial lien, then the trustee may not void the security interest. To withstand an attack, the security interest must be perfected. Under the laws of Virginia, the certificate of title which is issued by the DMV and shows the security interest on its face, is deemed to be notice to third parties. Va.Code § 46.1–71 (Rep.Vol.1980). The Virginia Supreme Court, in an opinion by Chief Justice Campbell, interpreted this provision to mean that when a certificate of title is issued without the lien noted thereon, there is no lien of record and the property is free of a recorded encumbrance. *Maryland Credit Finance Corp. v. Franklin Credit Finance Corp.,* 164 Va. at 582–83, 180 S.E. at 409–10. It follows that if no certificate of title has issued showing such lien, then the lien is unperfected: The security interest must be filed with the DMV. Perfection of a lien on a motor vehicle can be accomplished only by indicating the security interest on the face of the certificate of title. *See In re Smith,* 311 F.Supp. 900, 901 (W.D.Va.1970), *aff'd sub nom. Callaghan v. Commercial Credit Corp.,* 437 F.2d 898, 899 (4th Cir.1971); *In re McCroskey,* 19 U.C.C. Rep.Serv. (Callaghan) 1394, 1395 (W.D.Va. 1976) ("This court is of the opinion that Virginia law clearly requires notation of a lien on the certificate of title in order to perfect the lien.")

■ Accordingly, the defendants failed to perfect the Bank's lien prior to the commencement of the case. Under the Virginia law as this court interprets it, the lien is unperfected; therefore, the Bank is unsecured.[1]

---

1. Even though the Trustee answered the plaintiff's motion to remand the proceeding to the

Bankruptcy Court, stating that "the trustee has no viable interest in the matter in controversy,"

The third inquiry is what duty the trustee has to protect the Bank's secured status. The duties of a Chapter 13 trustee are set forth in 11 U.S.C. § 1302.[2] Nothing in this provision or the provisions cited therein requires the trustee to take any steps to protect the Bank's "secured" status. As of the commencement of the case, the lien was not perfected. Furthermore, the automatic stay provision of 11 U.S.C. § 362(a)(4) prohibits "any act to create, perfect, or enforce any lien against property of the estate." Thus, the trustee had no duty to protect the Bank's "secured" interest.[3]

## II. CONCLUSION

For the reasons stated in this opinion, the court affirms the decision of the Bankruptcy Court.

it appears that as trustee of the bankrupts' estates, he should "examine proofs of claims and object to the allowance of any claim that is improper." 11 U.S.C. § 1302(b)(1) and 704(4). Since the Bank's liens are unperfected, it would seem the Trustee has an interest.

**2.** 11 U.S.C. § 1302 sets forth in pertinent part:
(b) The trustee shall—
(1) perform the duties specified in sections 704(4), 704(5), 704(6), and 704(8) of this title;
(2) appear and be heard at any hearing that concerns—
(A) the value of property subject to a lien;
(B) confirmation of a plan; or
(C) modification of the plan after confirmation; and
(3) advise, other than on legal matters, and assist the debtor in performance under the plan.
(c) If the debtor is engaged in business, then in addition to the duties specified in subsection (b) of this section, the trustee shall perform the duties specified in sections 1106(a)(3) and 1106(a)(4) of this title....
11 U.S.C. § 704 provides:
The trustee shall—...
(2) be accountable for all property received;
(3) investigate the financial affairs of the debtor;
(4) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;
(5) if advisable, oppose the discharge of the debtor;
(6) unless the court orders otherwise, furnish such information concerning the estate

and the estate's administration as is requested by a party in interest; ...
and
(8) make a final report and file a final account of the administration of the estate with the court.
11 U.S.C. § 1106 states:
(a) A trustee shall ...
(3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;
(4) as soon as practicable—
(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to cause of action available to the estate; and
(B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates; ....

**3.** To the extent that the court has not made a final ruling in regard to the motion to remand to the Bankruptcy Court for further evidence in the previous memorandum opinion and order of September 28, 1983, the court concludes that any additional evidence which might be produced would not change the result of this opinion since a question of law is presented here.