In re OFFICE MACHINES EXCHANGE INC., Debtor.

Steven N. MOTTAZ, Trustee of the Bankruptcy Estate of Office Machines Exchange, Inc., Plaintiff,

v.

MID AMERICA BANK & TRUST COMPANY OF ALTON, Defendant.

Bankruptcy No. 82–50226.
Adv. No. 84–0224.

United States Bankruptcy Court, S.D. Illinois.

March 5, 1985.

Steven N. Mottaz, Alton, Ill., pro se.

Ronald Pallmann, East St. Louis, Ill., for defendant.

### ORDER

J.D. TRABUE, Bankruptcy Judge.

At East St. Louis, in said district, this matter having come before the Court pursuant to a complaint to avoid lien filed by the Trustee, acting as his own attorney; Ronald L. Pallmann representing Mid America Bank & Trust Company of Alton (hereinafter "The Bank"); after reviewing the memoranda submitted in support of the parties' respective positions and otherwise being fully advised in the premises, the Court makes the following findings of fact and conclusions of law:

1. Debtor filed a petition under Chapter 11 of the Bankruptcy Code on July 13, 1982, which was subsequently converted to Chapter 7 on April 4, 1984.

2. Steven N. Mottaz is the duly appointed Trustee of debtor's estate.

3. On or about January 16, 1980, the Bank loaned debtor the sum of $13,487.40, taking a security interest in a certain 1980 Chevrolet Corvette automobile.

4. The Bank caused its lien to be shown on the Certificate of Title to the automobile immediately after the January 1980 loan to debtor.

5. The face of the Certificate of Title indicates that H. Douglas Gregory, d/b/a Office Machines Exchange, is the owner of the automobile.

6. On or about April 12, 1982, the Bank made a second loan to debtor in the sum of $5,000.00, again securing the debt with the aforesaid 1980 Chevrolet Corvette automobile.

7. On or about July 12, 1982, the second loan to debtor became due and payable, with an outstanding balance of $2,912.45. The balance was renewed in the form of a third loan dated July 12, 1982, which was secured by the Corvette.

8. Debtor failed to make its July 1982 installment payment on its first loan to the Bank and thereafter, it failed to make succeeding monthly payments.

9. The third loan became due on October 12, 1982, but it was not paid when due.

10. On or about May 2, 1983, the balances due the Bank on the first and third loans were combined and the debtor signed a new note in the combined amount of $5,631.81, which was again secured by the 1980 Chevrolet Corvette.

11. On or about June 30, 1982, H. Douglas Gregory advised Ronald Thornton, Vice President of the Bank, that debtor had obtained a purchaser for the vehicle who would satisfy in full all the indebtedness owed the Bank. Thornton advised Gregory that he would be out of town on the closing date of the sale of the vehicle, but would sign the "Release of Lien" portion of the

Certificate of Title and have a bank employee surrender the same upon payoff.

12. On or about June 30, 1982, Thornton executed the Release of Lien, but the Bank maintained possession of the Certificate of Title.

13. The supposed prospective purchaser of the 1980 Corvette never appeared nor was there a payoff of the subject debts.

14. The Certificate of Title for the automobile has never been delivered to any party, and it is presently in the possession of the Bank.

The issue before the Court is whether the Bank has a properly perfected security interest in the 1980 Chevrolet Corvette automobile. The Trustee argues first that there was an improper transfer of ownership of the automobile from H. Douglas Gregory to the above-named debtor, which consequently vitiated the Bank's lien on the same. Secondly, the Trustee argues that he has a superior position to that of the Bank because the Bank released its lien as noted on the face of the Certificate of Title.

The incidents and validity of motor vehicle transfers in the State of Illinois are governed by *Ill.Ann.Stat.*, ch. 95½, § 3–112 (Smith-Hurd 1984). Section 3–112(c) states among other things that a lienholder must deliver possession of a Certificate of Title in a motor vehicle only upon request of the owner or transferee. The statute also indicates that the delivery of the Certificate of Title does not affect the rights of the lienholder under the underlying security agreement.

*In re Robison,* 665 F.2d 166 (7th Cir. 1981), holds that the failure to comply with § 3–112 of the Illinois Motor Vehicle Code does not render a transfer of title invalid as to a trustee in bankruptcy. In *Robison,* a debtor transferred ownership in a certain truck before the filing of bankruptcy without following the statutory provisions. The trustee in *Robison* argued that since the Certificate of Title indicated that the debtor owned the motor vehicle and the parties neglected to follow the Illinois statute, the truck should be property of the debtor's estate. The Seventh Circuit ruled that between the immediate parties a transfer was valid even though the statute had not been complied with. Applying rules of statutory construction, the appellate court held that the trustee in bankruptcy was not in the zone of interest of those parties that could benefit from a transferor's or transferee's failure to follow § 3–112 of the Motor Vehicle Code.

In the instant case, the Trustee is attempting to assert his status as a hypothetical lien creditor under the strong arm clause of the Bankruptcy Code, rather than claim vicarious ownership of the vehicle in question. Applying the logic of the *Robison* decision to the facts of the instant case, the Court finds that the Trustee's position regarding the transfer of ownership of the Corvette is not tenable. The Trustee herein cannot usurp the Bank's status as a lienholder because of any failure on the part of debtor or H. Douglas Gregory to have the Certificate of Title changed to reflect the debtor's ownership of the Corvette. Section 3–112 is intended to protect prospective transferees rather than give the Trustee in Bankruptcy a windfall in the event of noncompliance. *See, Robison,* 665 F.2d at 166. Furthermore, under the law, the lienholder need only transmit the Certificate of Title to the Secretary of State upon request of the owner or transferee. In the instant case, neither debtor nor H. Douglas Gregory took any action that would prompt the Bank to seek a change of title. In other words, absent a request by debtor or H. Douglas Gregory, the Bank had no responsibility to have the title changed when ownership of the automobile changed hands. Finally, § 3–112(c) of the Motor Vehicle Code explicitly states that the delivery of the Certificate of Title to the Secretary of State does not affect the rights of the lienholder under the underlying security agreement. The legislative intent is clear and unambiguous that the statutory provisions regarding vehicle transfers, or the failure to follow the same, do not concern a creditor's status as a lienholder.

The Trustee argues that the Bank no longer has a security interest in the Corvette because the Bank executed a release of its lien on the Certificate of Title. Under this theory, the Trustee, as a hypothetical lien creditor under § 544 of the Code, would have a superior position to that of the Bank and he would be able to recover the Corvette for the benefit of the estate under § 551 of the Code.

The statute governing the release of a security interest in motor vehicles where the title is being held by the lienholder is *Ill.Ann.Stat.*, ch. 95½, § 3–205(b) (Smith-Hurd 1984).

> (b) Upon the satisfaction of a security interest in a vehicle for which the certificate of title is in the possession of a prior lienholder, the lienholder whose security interest is satisfied shall within ten (10) days after demand and, in any event, within thirty (30) days execute a release and deliver the release to the owner or any person who delivers to the lienholder an authorization from the owner to receive it. The lienholder in possession of the certificate of title may either deliver the certificate to the owner, or the person authorized by him, for delivery to the Secretary of State, or, upon receipt of the release, may mail or may delivery the certificate and release, along with prescribed application and require fee, to the Secretary of State, who shall issue a new certificate.

 The Court finds that mere execution of the release portion on the certificate of title by a lienholder is insufficient to effectuate a release where there is no satisfaction of the security interest. The statute clearly indicates that satisfaction is a prerequisite for the release of a security interest. *See, Lansdowne v. Security Bank of Coos County (In re Smith & West Construction, Inc.)*, 28 B.R. 682 (Bankr.D.Or.1983). The record shows that the debt owing the Bank has not been satisfied. It would be inequitable and contrary to the law to permit the Trustee to avoid the Bank's security interest just because the face of the certificate of title indicates that the lien was released. The statutory scheme for the creation and release of liens was intended to protect third party transferees and prospective lienholders. If the Bank had relinquished possession of the certificate of title, thereby creating the possibility that third parties would take positions in reliance of the Bank's executed release form, the Bank would be estopped from claiming that it had a valid lien in the Corvette, even if its security interest was not satisfied. Under the facts of this case, however, the Bank has constantly maintained possession of the certificate of title, thereby effectively precluding any third party from obtaining knowledge of its erroneous release. The Trustee cannot assert his status as a hypothetical lien creditor because the Bank has a properly perfected security interest in the 1980 Chevrolet Corvette.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the Trustee's complaint to avoid the lien of Mid America Bank & Trust Company of Alton in a certain 1980 Chevrolet Corvette automobile be, and the same hereby is, denied.