**In re Eugene BLACKERBY aka Edward E. Blackerby, Debtor.**

**SOUTHTRUST BANK OF ALABAMA, NATIONAL ASSOCIATION, as agent for First Bank of Alabaster, Plaintiff,**

**v.**

**Andre' TOFFEL, As Trustee of the Bankruptcy Estate of Eugene Blackerby aka Edward E. Blackerby and Eugene Blackerby aka Edward E. Blackerby, Defendants.**

**Bankruptcy BK85–1348.**

United States Bankruptcy Court, N.D. Alabama, S.D.

Sept. 24, 1985.

Alan D. Levine, Birmingham, Ala., Atty. for SouthTrust Bank of Alabama.

Andre' Toffel, Birmingham, Ala., interim trustee.

Robert R. Kracke, Birmingham, Ala., Atty. for debtor/defendants.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Bankruptcy Judge.

This matter came before the Court on the MOTION FOR RELIEF FROM STAY filed by Southtrust Bank, as agent for First Bank of Alabaster (hereinafter collectively referred to as "the Bank"). The Bank has also filed a MOTION FOR SUMMARY JUDGMENT. Rule 56 of the Federal Rules of Civil Procedure is made applicable to adversary proceedings by Rule 7056 of the Bankruptcy Rules. *In re Independent Clearing House Co.*, 41 B.R. 985, 11 C.B.C.2d 196, 204 (Bktcy.D.Utah 1984). In determining whether to grant a motion for summary judgment, the Court must examine the pleadings and supporting affidavits to ascertain if a genuine issue of material fact exists. *Id.* If there is none, the Court must apply the law to the undisputed facts and render judgment. *Id.* The facts of this case are not is dispute, and the following shall constitute the findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

## FINDINGS OF FACT

On July 9, 1982 the debtor, Edward Eugene Blackerby, and his wife executed an Installment Note, Security Agreement & Disclosure, loan number 50233982, (hereinafter referred to as "Loan # 1") in favor of

the Bank in the amount of $4,116.96. By this instrument, the debtor and his wife granted the Bank a security interest in their 1978 Buick LeSabre automobile VIN 4N69Y8HS41158. The Bank properly perfected its security interest in the automobile by having its lien noted on the face of the certificate of title in compliance with Alabama Code Section 32–8–61 (1983).[1] The security agreement portion of the instrument evidencing Loan # 1 contained the following future advance clause:

> NOW, THEREFORE, the Debtor, in consideration of the premises, and in order to secure the payment of said indebtedness, and any and every extension or renewal thereof, and all other liabilities and indebtedness of the Debtor to the Creditor, now existing or hereafter incurred or arising, direct and indirect, and however incurred, and the compliance with all the stipulations herein contained, does hereby transfer, sell, assign and convey to First Bank of Alabaster, its successors and assigns, the following described property and the proceeds thereof (the "collateral") and a security interest therein, to-wit:

On October 5, 1982, Mr. and Mrs. Blackerby executed another note, loan number 80234916, (hereinafter referred to as "Loan # 2") in the amount of $8,040.00. Loan # 2 was specifically made on an unsecured basis.

Loan # 1 was paid off on December 17, 1984. Prior to that date, however, Mr. and Mrs. Blackerby acknowledged by a separate instrument dated April 27, 1984 that the 1978 Buick LeSabre was "assigned as collateral on Loan No. 80234916 (Loan # 2)." When Loan # 1 was paid off on December 17, 1984, the Bank mistakenly marked its lien released on the certificate of title. The debtor made no demand for the certificate of title in its file. When Mr. Blackerby filed his Chapter 7 petition on March 1, 1985, the outstanding balance on Loan # 2 was $5,025.20 which is greater

than the fair market value of the automobile.

## CONCLUSIONS OF LAW AND APPLICATION TO FACTS

The Bank will be entitled to relief from the automatic stay if it can show that the debtor has no equity in the automobile. 11 U.S.C. Section 362(d)(2) (1984). If the bank can show that it has a valid security interest in the automobile with respect to Loan # 2, the debtor will have no equity in the automobile because its fair market value does not exceed the outstanding balance due on Loan # 2. The Bank bears the burden of proof on the issue of the debtor's equity. 11 U.S.C. Section 362(g) (1984). It appears to the Court that all of the contentions of the parties may be summarized by two issues: (1) whether the Bank has a security interest in the automobile with respect to Loan # 2 and (2) if the Bank does have a security interest, whether that properly perfected security interest was effectively released.

### 1. SECURITY INTEREST

Generally, a security agreement which contains a description of the collateral and which is signed by the debtor is essential to the creation of a security interest in the collateral.[2] *Matter of Metzler*, 405 F.Supp. 622 (N.D.Ala.1975); *First Nat'l Bank v. Taylor*, 18 B.R. 746 (Bkrtcy.S.D.Ala.1982); *In re Knight*, 1 B.C.D. 173 (N.D.Ala.1973); Ala.Code 7–9–203(1)(a) (1984). Therefore, the parties must have agreed in writing that the automobile would stand as security for Loan # 2.

■ The Bank argues that the future advance provisions of the security agreement portion of the instrument evidencing Loan # 1 is sufficient to evidence the parties' intent that the automobile stand as security for Loan # 2. The case of *Peoples Bank & Trust Co. v. Coleman*, 736 F.2d

---

1. *See infra* n. 4 and accompanying text.

2. A written security agreement signed by the debtor is not necessary where the collateral is in

the possession of the secured party pursuant to an agreement. Ala.Code Section 7–9–203 (1984).

643 (11th Cir.1984) is controlling authority on this issue.

In the *Coleman* case, the Eleventh Circuit Court of Appeals ruled that a future advance was not secured by real estate under a dragnet clause in the mortgage where the subsequent advance was expressly secured by two automobiles and not by the real estate mortgage. This conclusion of the *Coleman* Court was based upon the law that parties to a contract may modify an executory contract as they see fit. *Id.* at 645 (citing *Kinmon v. J.P. King Auction Co.*, 290 Ala. 323, 276 So.2d 569 (1973)). The Court concludes that the parties in the instant case modified the future advance clause in Loan # 1 by stating that Loan # 2 was expressly made on an unsecured basis. Therefore, at the time of the making of Loan # 2, the automobile did not secure that future advance.[3]

■ Thus, but for the instrument dated April 27, 1984 which was signed by the debtor and his wife and which "assigned [the automobile] as collateral on Loan No. 80234916 (Loan # 2)", Loan # 2 would have been unsecured. The Court determines that the document which was executed by the debtor and his wife on April 27, 1984 comports with the requirements for a valid security agreement under Alabama Code Section 7–9–203(1)(a) (1984). It is a writing which is signed by the debtor which describes the collateral and provides for a security interest therein. *See* Ala.Code Section 7–9–203(1)(a); –105(1)(c) (1984); *cf.* Ala.Code Section 7–9–203(b) Official Comment 1 (1975) (repealed effective February 1, 1982). The debtor, therefore, by that instrument granted the Bank a security interest in the automobile with respect to Loan # 2.

The April 27, 1984 instrument had the further effect of modifying the future advance clause of Loan # 1 again to make that clause include Loan # 2. The Bank may, therefore, rely on two security agreements to support its security interest in the automobile with respect to Loan # 2—the future advance clause in Loan # 1 and the April 27, 1984 security agreement.

■ The debtor has contended that pursuant to Alabama Code Section 7–9–204(2) (1984), the automobile could not stand as security for Loan # 2 because the future advance clause "expired by operation of law." That section provides:

**Section 7–9–204. After-acquired property; future advances.**

(1) Except as provided in subsection (2), a security agreement may provide that any or all obligations covered by the security agreement are to be secured by after-acquired collateral.

(2) No security interest attaches under an after-acquired property clause to consumer goods other than accessions (section 7–9–314) when given as additional security unless the debtor acquires rights in them within 20 days after the secured party gives value.

(3) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment (subsection (1) of section 7–9–105).

Ala.Code Section 7–9–204 (1984). The Court must reject the debtor's contention since subsection (2) is a limitation on the use of an *after-acquired property clause* with respect to consumer goods. Subsection (3) clearly authorizes the use of *future advance clauses* with no such limitations. The Court also rejects the debtor's argu-

---

**3.** The fact that Loan # 2 was expressly made on an unsecured basis provides an alternative basis for the Court's ruling on this point. Because Loan # 2 was not a "transaction ... which is intended to create a security interest in personal property ...," it is outside the scope of Article 9. Ala.Code Section 7–9–102(1)(a) (1984). Because it was expressly not in the contemplation of the parties at the time of the making of Loan # 2

that the automobile would secure Loan # 2, the subsequent loan could not be "pulled in" under the future advance provision of Loan # 1. When the parties executed the security agreement on April 27, 1984 stating that the automobile was "assigned as collateral on [Loan No. 2]", however, Loan # 2 became secured both under that security agreement and under the future advance clause of Loan # 1.

ment that the instant future advance clause is ambiguous. Because the debtor has signed a security agreement granting the Bank a security interest in the automobile with respect to Loan # 2, value has been given, and the debtor has rights in the collateral. The Court determines that the Bank's security interest in the debtor's automobile attached with respect to Loan # 2, Ala.Code Section 7–9–203(1) (1984).

## 2. PERFECTION

The debtor argues that the Bank's security interest in the automobile became unperfected when the Bank indicated that it had released its lien on the face of the certificate of title. The Bank, on the other hand, contends that it remains perfected in spite of that fact it kept the certificate in its file and the debtor did not make a demand for the return of the certificate of title. These facts present an issue of first impression under Alabama law, and no cases on the precise point have been found from any other jurisdiction.

The perfection of the Bank's security interest in the debtor's 1978 Buick LeSabre is governed by the certificate of title statutes of Alabama. Ala.Code Section 32–8–30 (1983). Alabama Code Section 32–8–61 (1984) provides:

**Section 32–8–61. Perfection of security interests.**

(a) Unless excepted by this section, a security interest in a vehicle for which a certificate of title is required by the terms of this chapter is not valid against creditors of the owner or subsequent transferees or lienholders of the vehicle unless perfected as provided in this article.

(b) A security interest is perfected by the delivery to the department of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the

delivery is completed within 10 days thereafter, otherwise, as of the time of the delivery.

Ala.Code Section 32–8–61 (1983).[4] These statutes prescribe the exclusive method for perfecting a security interest in an automobile bearing a model year of 1975 and later. Ala.Code Section 32–8–66 (1983).

The Court has already found as a matter of fact that the Bank complied with these statutory provisions in perfecting its security interest at the time of the making of Loan # 1. The only issue remaining is whether the Bank destroyed its perfected status when it mistakenly marked its lien released when Loan # 1 was paid off even though it retained the certificate of title in its file and no demand was made therefor.

▇ The Court concludes that Alabama Code Section 32–8–64 (1983) governs this issue. That section provides in pertinent part:

**Section 32–8–64. Release of security interest.**

(a) Upon the satisfaction of a security interest in a vehicle for which the certificate of title is in the possession of the lienholder, he shall, within 10 days after demand execute a release of his security interest, in the space provided therefor on the certificate or as the department prescribes, and mail or deliver the certificate and release to the next lienholder named therein, or, if none, to the owner or any person who delivers to the lienholder an authorization from the owner to receive the certificate. The owner, other than a dealer holding the vehicle for resale, shall promptly cause the certificate and release to be mailed or delivered to the department, which shall release the lienholder's rights on the certificate or issue a new certificate.

Ala.Code Section 32–8–64 (1983). The Court concludes from this section that the Bank has not effectively released its lien simply by virtue of its mistakenly so noting on the certificate of title. The Court determines that under Alabama Code Section

---

**4.** The word "department" as used in Chapter 8 of Title 28 of the Alabama Code means the

Department of Revenue of the State of Alabama. Ala.Code Section 32–8–2(1) (1983).

32–8–64 (1983), the lien is not effectively released until the certificate of title indicating the release of the lien is *mailed or delivered* to "the next lienholder named therein, or, if none, to the owner or any person who delivers to the lienholder an authorization from the owner to receive the certificate." *Id.*

It is the considered opinion of the Court that such a holding does no violence to the purposes underlying the Alabama Uniform Certificate of Title and Antitheft Act one of which is to provide a means for interested parties to ascertain essential information concerning title to vehicles. *Congress Fin. Corp. v. Funderburk*, 416 So.2d 1059, 1061 (Ala.Civ.App.1982). Even though the face of certificate may no longer reflect the existence of the Bank's lien, the records of the Department of Revenue of the State of Alabama do reflect the Bank's lien. This fact when coupled with the Bank's continued possession of the certificate of title clearly provides the means for an interested party to ascertain the existence of the Bank's lien. *See id.*

Several Courts have held that a lender's mere possession of a certificate of title without having the lien noted thereon was insufficient to perfect the lender's lien on the vehicle. *See e.g. In re Farris*, 40 B.R. 58 (Bkrtcy.M.D.Ala.1984); *In re Hillstrom Shipbuilding Co.*, 5 B.R. 87 (Bkrtcy.D.Or. 1980). While instant case is similar to that situation, since in neither case will the face of the certificate give notice of the lien to third parties, the instant case is distinguishable from the mere possession cases since the lienholders in those cases was *never* properly perfected. At no time in the mere possession situation would the records of the department of revenue reflect the existence of the lien. Further, the issue in those cases was whether the lienholder's security interest was ever *perfected* whereas the issue in the instant case is whether the lienholder had effectively *released* his properly perfected lien.

■ Lastly, the Court notes that the Bank was under no duty to deliver the certificate nor did the debtor have any right to demand such delivery since the security interest in the automobile had not in fact been satisfied. *See* Ala.Code Section 32–8–64 (1983). For all of these reasons, the Court concludes that the Bank did not release its security interest in the debtor's automobile.

### CONCLUSION

Because the Court has determined that the Bank's security interest in the automobile attached with respect to Loan # 2 and that the Bank did not effectively release its lien, the Court concludes that the debtor has no equity in the 1978 Buick LeSabre which is the subject of this dispute. The Bank's MOTION FOR SUMMARY JUDGMENT is, therefore, due to be GRANTED as is it MOTION FOR RELIEF FROM STAY. A separate order will be entered consistent with this opinion.