**In re SPRING GROVE TRANSPORT, INC., Debtor.**

**GENERAL ELECTRIC CAPITAL CORPORATION, Movant,**

v.

**SPRING GROVE TRANSPORT, INC., Defendant.**

Bankruptcy No. 95–35472–T.
CM No. 96–297.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

July 16, 1996.

Dion W. Hayes, McGuire, Woods, Battle & Booth, L.L.P., Richmond, VA, for General Electric Capital Corporation.

William A. Young, Jr., Spinella, Owings & Shaia, P.C., Richmond, VA, for Chapter 7 trustee.

Paula S. Beran, Leclair, Ryan, Richmond, VA, for Jim's Heavy Truk.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Hearing was held on May 6, 1996, on GE Capital's motion for relief from the automatic stay. The motion was opposed by debtor's chapter 7 trustee. The trustee argued that, at the time debtor filed its chapter 7 petition, GE Capital's liens on six of debtor's tractors were unperfected and were therefore subject to avoidance by the trustee. At the conclusion of the hearing, the court took the matter under advisement.

The court finds that GE Capital's liens were unperfected on the date debtor filed bankruptcy. Therefore the motion will be denied.

### Findings of Fact

On January 5, 1994, debtor Spring Grove Transport, Inc., purchased six Kenworth T–600 tractors. To finance the purchase, debtor borrowed $187,812.00 from ITT Commercial Finance Corporation. Pursuant to the loan, debtor executed a note in favor of ITT for the amount of the loan. To secure the note, debtor granted ITT a purchase money security interest in the vehicles which was indicated on each of the motor vehicle certificates of title.

On March 31, 1995, ITT assigned the note to movant, General Electric Capital Corporation. Following the assignment, GE Capital obtained a power of attorney from ITT in order to allow GE Capital to release ITT's liens on the vehicles. The release was necessary so that GE Capital could obtain new certificates of title evidencing that the liens on the vehicles had been transferred to GE Capital. An employee of GE Capital executed the release portions of the certificates of title on November 30, 1995.

Debtor filed a chapter 7 petition on December 15, 1995. At that time, GE Capital

had released ITT's liens on the vehicles but had not yet filed an application with the Virginia Department of Motor Vehicles to obtain new certificates of title indicating GE Capital's lien. GE Capital did not mail the applications to the Department of Motor Vehicles until December 21, 1995. The Department of Motor Vehicles received the applications on January 8, 1996, and issued new certificates of title on January 16, 1996.

Alleging that debtor was in default under the note, GE Capital filed a motion for relief from the automatic stay on March 13, 1996. The chapter 7 trustee filed an answer on March 28, 1996, alleging that the trustee, by his status as a judicial lien holder under 11 U.S.C. § 544(a), could avoid GE Capital's lien and therefore GE Capital's claim was unsecured. As an unsecured creditor, GE Capital had no right to relief from the automatic stay. Final hearing on the motion was set for May 6, 1996. Prior to the hearing, the parties stipulated that the fair market value of the vehicles was $96,000.00 and that the debt owed by debtor to GE Capital on the date the petition was filed was no less than $120,000.00.

*Discussion and Conclusions of Law*

This case requires the court to determine if GE Capital's lien can be avoided by debtor's chapter 7 trustee pursuant to the trustee's status as a hypothetical judicial lien creditor under 11 U.S.C. § 544(a)(1). The trustee argues that ITT's liens were released prior to debtor filing bankruptcy on December 15, 1995, and that GE Capital's liens were not perfected under Virginia law at the time the bankruptcy petition was filed. As such, GE Capital's lien is subject to avoidance by the trustee pursuant to Bankruptcy Code § 544(a)(1).

Section 544(a)(1) states:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1).

In short, § 544(a)(1) grants a trustee a hypothetical judicial lien on debtor's property as of the date the bankruptcy petition was filed. The priority of that lien must then be determined in accordance with state law. *See Crestar Bank v. Neal (In re Kitchin Equip. Co.)*, 960 F.2d 1242, 1245 (4th Cir.1992) (stating that federal law grants trustee power to avoid some obligations and transfers of debtor, but exercise of that power is determined by state law). There is no doubt that § 544(a)(1) is available to the trustee in the context of security interests in motor vehicles. *See First E. Bank v. Minichello (In re Minichello)*, 120 B.R. 17 (Bankr. M.D.Pa.1990); *In re Luchenbill*, 112 B.R. 204, 213 (Bankr.E.D.Mich.1990). Accordingly, the court must decide whether under Virginia law, the judicial lien granted to the trustee pursuant to § 544(a)(1) has priority over the liens of GE Capital, which were not noted on the vehicle titles until some weeks after debtor filed bankruptcy.

In Virginia, when the Department of Motor Vehicles receives an application for a certificate of title which indicates that there are security interests in a vehicle, the Department will issue a certificate of title which lists the disclosed security interests in the order of their priority. Va.Code Ann. § 46.2–636 (Michie 1994). Once issued, the certificate of title acts to serve notice to all creditors and purchasers that a security interest in the vehicle exists. Va.Code Ann. § 46.2–638 (Michie 1994). Recording of a security interest in a motor vehicle is not required. *Id.* Pursuant to section 46.2–640, those security interests appearing on the certificate of title are to have priority over all other liens and security interests, regardless of how they were created. Va.Code Ann. § 46.2–640 (Michie 1994).

These statutes have been interpreted as requiring a lien to be noted on the certifi-

cate of title in order for a lien on a motor vehicle to be deemed perfected. *See Richlands Nat'l Bank v. Smith,* 34 B.R. 749, 752 (W.D.Va.1983) (interpreting Va.Code § 46.1–71, predecessor to § 46.2–638, and holding that "[p]erfection of a lien on a motor vehicle can be accomplished only by indicating the security interest on the face of the certificate of title"); *see also Minichello,* 120 B.R. at 20 (construing similar provision enacted by Pennsylvania and holding that only way to perfect security interest in motor vehicle is to note lien on certificate of title). On December 15, 1995, when debtor filed its bankruptcy petition, the certificates of title for the six tractors indicated only that ITT's liens had been released and did not indicate that ITT's liens had been assigned to GE Capital. Therefore, under Virginia law, the liens of GE Capital were not perfected as of December 15, 1996, and they are subordinate to the trustee's hypothetical judicial lien granted by § 544(a)(1).

■ GE Capital does not dispute that the ITT liens had been released on the vehicle titles on November 30, 1995, and that on December 15, 1995, GE Capital had not yet applied for new certificates of title indicating its liens on the tractors. Instead, GE Capital seeks an equitable exception to Va.Code §§ 46.2–638 and –640 in that it asks the court to recognize the validity of GE Capital's liens despite the fact that the liens did not appear on the certificates of title on December 15, 1995. GE Capital argues that the actions it took to procure the new certificates of title were reasonable and that, if the court finds that the trustee's lien has priority over theirs, future purchases of chattel paper will be discouraged because purchasers will not want to run the risk of having their liens avoided in bankruptcy before they can obtain new certificates of title. The court disagrees with this assertion. In this case, GE Capital executed the release portions of the certificates of title on November 30, 1995. GE Capital did not mail the applications for new certificates of title until nearly a month later on December 21, 1995. GE Capital has failed to provide a satisfactory explanation for the delay. Had GE Capital been prudent and not executed the release provisions until the applications were mailed, the liens of ITT

would have been perfected on the date of filing. Sections 46.2–638 and –640 and the *Smith* case make it clear that it is the certificate of title which governs the priority of liens on a motor vehicle in Virginia. The court does not find that the facts of this case warrant any deviation from this rule.

This finding is supported by the decision of the United States District Court for the Western District of Virginia in *Richlands Nat'l Bank v. Smith,* 34 B.R. 749, 752 (W.D.Va.1983). In *Smith,* the debtors purchased two new vehicles from a Ford dealer. The dealer financed the transaction and debtors granted the dealer a security interest in the vehicles which the dealer later assigned to Richlands National Bank. At the time of purchase, the security agreement was noted on the certificates of origin for each vehicle. Debtors, however, failed to send the certificates of origin to the Department of Motor Vehicles and apply for certificates of title even though they were under a statutory duty to do so. *Smith,* 34 B.R. at 750. The district court affirmed the bankruptcy court's ruling that the bank was unsecured since certificates of title indicating a lien on the vehicles had never been obtained. *Smith,* 34 B.R. at 752–53.

Clearly the facts of *Smith* are more deserving of an equitable exception to Va.Code §§ 46.2–638 and 640 than those present in this case. In *Smith,* the failure of the bank to perfect its security interest was largely due to the fault of the owners of the vehicles to obtain certificates of title for the vehicles. Despite this, the district court was unwilling to find an exception to Va.Code §§ 46.2–638 and 640 in holding that the bank was unsecured. As this court has already found, the failure of GE Capital to perfect its security interest in the six tractors can be traced directly to GE Capital. Following *Smith,* the court finds no reason to create an equitable exception to Va.Code §§ 46.2–638 and 640 based on the facts of this case.

■ A second argument posed by GE Capital is that the liens of ITT were still valid on December 15, 1995, because the releases executed on November 30, 1995, were not effective to release ITT's liens. GE

Capital relies on case authority from other jurisdictions that holds that a release of a lien on a motor vehicle is not effective unless the lien has been satisfied in full. *See South-trust Bank, N.A. v. Toffel (In re Blackerby)*, 53 B.R. 649, 653–54 (Bankr.N.D.Ala.1985); *Mottaz v. Mid Am. Bank & Trust Co. (In re Office Machs. Exch., Inc.)*, 47 B.R. 644, 647 (Bankr.S.D.Ill.1985); *Lansdowne v. Security Bank (In re Smith & West Constr., Inc.)*, 28 B.R. 682, 684–85 (Bankr.D.Or.1983).

At the outset, the court finds that the cases cited by GE Capital are distinguishable. In both *Blackerby* and *Smith & West Constr., Inc.*, a debtor was indebted to a bank under several notes, each of which was secured by debtor's vehicle. After debtor had made sufficient payment to pay off one of the notes, the bank executed the release portion on the certificate of title in the mistaken belief that the owner had paid off all outstanding debt to the bank. *Blackerby*, 53 B.R. at 651 ("When Loan # 1 was paid off on December 17, 1984, the Bank mistakenly marked its lien released on the certificate of title."); *Smith & West Constr., Inc.*, 28 B.R. at 683. In *Office Machs. Exch., Inc.*, a bank official executed the release portion on the certificate of title after being assured by the owner of the vehicle that a purchaser for the vehicle had been found and that the proceeds from the sale would be sufficient to pay off all of the owner's indebtedness to the bank. The sale was never consummated, and the bank's lien had not been reinstated on the certificate of title by the time the owner filed bankruptcy. In each of the cited cases, had the bank been aware of all the relevant facts, the bank would not have executed the release.

In the instant case, the owner of the vehicles, Spring Grove Transport, Inc., has not played a role in GE Capital's effort to retitle the vehicles. Thus, GE Capital makes no claim of deceit or reliance as the bank did in *Office Machs. Exch., Inc.* It is also clear that when GE Capital executed the releases on November 30, 1995, it had every intention of releasing ITT's liens, and there was no mistake involved. Because GE Capital does not argue that it executed the releases by mistake or claim that it relied on any action

taken by debtor, the court finds GE Capital's reliance on *Blackerby, Office Machs. Exch., Inc.* and *Smith & West Constr., Inc.*, misplaced.

Besides being distinguishable, the court does not believe that the rule of law adopted in these cases would be followed in Virginia. Each of the cases cited by GE Capital relies on a state law provision which requires the holder of a security interest in a motor vehicle to execute a release of their lien upon satisfaction of their claim. The statutes involved, those of Alabama, Illinois, and Oregon, each begin with the language "Upon the satisfaction of a security interest in a motor vehicle" and then go on to require the lien holder to execute a release. Relying on this language, it is understandable that two of the courts explicitly held that satisfaction of the lien holder's claim was a prerequisite for a release to be valid. *See Office Machs. Exch., Inc.*, 47 B.R. at 647; *Smith & West Constr., Inc.*, 28 B.R. at 684. The court in *Blackerby* implied as much by going one step further and requiring that, not only must the lien holder execute the release provision (therefore implying that the claim had been satisfied), but the lien holder must also deliver the release to the next junior lien holder as required by the statute in order for the release to be effective. *Blackerby*, 53 B.R. at 653–54.

Virginia's statutory scheme does not specifically require a holder of a lien on a motor vehicle to execute a release of their lien once the lien has been satisfied. Once an owner has paid the lien holder's claim in full, the lien holder must deliver the certificate of title to the next junior lien holder or, if none exists, to the owner. Va.Code Ann. § 46.2–641 (Michie 1994). Virginia also makes it a Class 3 misdemeanor for a lien holder to refuse to mark the lien as satisfied or to refuse to deliver the certificate of title. Va. Code Ann. § 46.2–643 (Michie 1994). Though similar to the provisions found in Alabama, Illinois and Oregon, it is not clear that Virginia requires actual satisfaction of a lien in order for a release of that lien to be valid. This is especially so absent the specific language "upon satisfaction of a security interest" in Virginia's release provisions.

In conclusion, the court finds that on December 15, 1995, GE Capital held an unperfected security interest in the six tractors. Because GE Capital's interest was unperfected on the date debtor filed its bankruptcy petition, the trustee's hypothetical judicial lien under § 544(a)(1) has priority, rendering GE Capital's lien subject to avoidance by the chapter 7 trustee. As such, GE Capital is left with an unsecured claim against debtor's estate.[1] Therefore cause does not exist under 11 U.S.C. § 362(d)(1) to afford GE Capital relief from the automatic stay and GE Capital's motion must be denied.

A separate order will be entered.

---

1. Under strict adherence to state law, GE Capital's lien would not be avoided but would only be subordinated to that of the trustee. Since its inception, however, § 544(a)(1) has been interpreted as allowing a trustee to avoid any lien subordinate to the trustee's hypothetical judicial lien. *See, e.g., Pacific Express, Inc. v. Teknekron Infoswitch Corp. (In re Pacific Express, Inc.),* 780 F.2d 1482, 1486 (9th Cir.1986) (finding that holder of lien which did not have priority over that of the trustee pursuant to § 544(a)(1) was left with unsecured claim); *Freeman v. Eli Lilly Fed. Credit Union (In re Freeman),* 72 B.R. 850, 855 (Bankr.E.D.Va.1987); *see also* 2 David G. Epsteinn et al., *Bankruptcy* § 6–61 n. 12 (1992).