CITY OF BOSTON & another[1] vs. ROCKLAND TRUST COMPANY
& others.[2]

Suffolk.    October 7, 1983. — February 2, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Secured Transactions. Practice, Civil,* Standing. *Constitutional Law,*
Standing to challenge constitutionality. *Taxation,* Collection by dis-
tress, Tax lien.

Under G. L. c. 106, § 9-103, as appearing in St. 1979, c. 512, § 7, a secur-
ity interest in a motorhome which had been perfected under Massa-
chusetts law lapsed when the debtors removed the motorhome to
Florida for more than four months and registered it in that State; sub-
sequent return of the debtors with the motorhome to Massachusetts
did not automatically reestablish a perfected security interest. [51-55]
A creditor with an unperfected security interest in a motorhome did not
have standing to question the validity of a city's seizure of the motor-
home under G. L. c. 60, §§ 24 and 29, to secure satisfaction for real
estate taxes owed by the debtor.  [55-58]
A city's seizure of a motorhome pursuant to G. L. c. 60, §§ 24 and 29, to
secure payment of real estate taxes made it a lien creditor within the
meaning of G. L. c. 106, § 9-301 (1) (*b*), with rights superior to the
holder of an unperfected security interest in the motorhome. [58-60]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 31, 1980.

The case was heard by *Connolly,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

---

[1] Collector-Treasurer of the city of Boston.

[2] Bob Moore, Inc., George Wattendorf and Margaret Wattendorf. The
Wattendorfs have defaulted in this case.

*Lance R. Pomerantz,* Special Assistant Corporation Counsel, for the plaintiffs.

*Jacob W. Smith* for Rockland Trust Company.

NOLAN, J. The plaintiffs (city) commenced an action seeking a declaration of the rights of the parties with respect to a motorhome purchased by the defendants George and Margaret Wattendorf. The defendant Rockland Trust Company (Rockland) counterclaimed, requesting that the trial court declare Rockland's lien superior, or alternatively award Rockland damages for conversion. The focus of this appeal[3] concerns the dispute between the city and Rockland. The city claims a superior right in the motorhome through an asserted lien acquired by seizure and distraint of the motorhome to secure satisfaction for real estate taxes owed by George Wattendorf. Rockland claims a superior right in the motorhome through its alleged prior perfected security interest in the motorhome.[4] We conclude that Rockland's perfected security interest has lapsed and that the city, which acquired a lien through seizure and distraint, has superior rights in the motorhome.

On April 28, 1979, the Wattendorfs, under the assumed names of Marion and Margaret Jones, purchased a motorhome from the defendant Bob Moore, Inc., a dealer in motorhomes. The Wattendorfs financed this purchase through an instalment sale contract, which the dealer assigned to Rockland. On May 23, 1979, Rockland secured from the Registry of Motor Vehicles a certificate of title which contained a notation of Rockland's lien.

In the fall of 1979, the Wattendorfs drove the motorhome to Florida, where they usually spent the winter months. While in Florida, the Wattendorfs registered the motorhome and obtained Florida license plates. They subse-

---

[3] We transferred this case from the Appeals Court on our own motion. G. L. c. 211A, § 10 (A).

[4] Although the city's tax claim was against only George Wattendorf, Margaret Wattendorf has not asserted a claim concerning her interest in the motorhome. Furthermore, Rockland has raised no independent claim based on Margaret Wattendorf's interest.

quently returned to Scituate, Massachusetts, in the spring of 1980, more than four months later.

In September, 1980, George Wattendorf owed the city more than $100,000 in real estate taxes. On September 4, 1980, upon learning of the Wattendorfs' ownership of the motorhome, the city seized and distrained the vehicle purportedly pursuant to G. L. c. 60, §§ 24 and 29. The city, however, failed to obtain a court warrant to distrain or to commit before seizing the motorhome, as is required by G. L. c. 60, §§ 24 and 29.

Immediately prior to the city's scheduled auction on October 1, 1980, representatives of Rockland appeared at the site, informed the auctioneer of Rockland's lien on the motorhome, and exhibited the certificate of title. The auctioneer proceeded with the sale in spite of this information, but informed the potential purchasers of the possible lien. The city purchased the motorhome for $9,000.

After the Wattendorfs defaulted on the instalment sale contract, Rockland obtained a default judgment against them on November 5, 1980. The judgment awarded immediate possession of the motorhome to Rockland. Initially, the city was a party to that action, but at its request, it was dropped as a party.

The trial judge in the present action held in favor of Rockland, ruling that Rockland's security interest was continuously perfected and that the city's seizure and distraint of the motorhome were invalid for failure to comply with the provisions of G. L. c. 60, §§ 24 and 29. The trial judge also held the city liable in conversion for the sum of $21,800.[5]

On appeal the city asserts that perfection of Rockland's security interest lapsed when the Wattendorfs removed the motorhome from Massachusetts and registered it in Florida; that the city's seizure and distraint of the motorhome render it a "lien creditor" with rights superior to Rockland's unperfected security interest; and that the bank has no standing to

---

[5] The trial judge found that the fair market value of the motorhome at the time of seizure was $21,800.

question the validity of the seizure and distraint. We agree with each assertion and reverse the lower court's decision. We hold that the city's rights in the motorhome are superior to those of Rockland.

1. *Lapse of Rockland's perfected security interest.* General Laws c. 90D, §§ 21, 22, and 26, provide that the exclusive method of perfecting a security interest in a motor vehicle is through notation of the lien on a valid certificate of title. The Uniform Commercial Code, G. L. c. 106, § 9-103 (2) (*b*), governs the validity and continuity of perfection because subsection (2) "applies to goods covered by a certificate of title issued under a statute of the commonwealth." G. L. c. 106, § 9-103 (2) (*a*), as appearing in St. 1979, c. 512, § 7.

General Laws c. 106, § 9-103 (2) (*b*), protects a security interest perfected under State law for at least four months "after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction." It is undisputed that the Wattendorfs vacationed in Florida for over four months and that they registered the motorhome in Florida. Rockland argues, and the judge ruled, however, that the word "removed" as used in the statute, refers to a permanent removal such as a change in domicil and not to a temporary removal such as a vacation. Rockland asserts that, because the city did not present any evidence demonstrating that the Wattendorfs intended to change their domicil, the four-month period cannot be applied. We disagree.

According to the plain language of subsection (2) (*b*), the triggering events which cause a lapse in perfection are re-registration in the removal jurisdiction and change in location for over four months. The meaning of the word "remove" is "[t]o change or shift the location, position, station, or residence, of." Webster's New Int'l Dictionary 2108 (2d ed., 1959). We conclude that the statute refers to a change in the location of the goods, regardless of the intent of the owner to change his residence. We base this conclusion on the words of the statute, which are the prime indi-

cator of its meaning. *Nantucket Conservation Found., Inc.
v. Russell Management, Inc.,* 380 Mass. 212, 214 (1980).
The statute refers merely to removal of the goods. It makes
no reference to the owner's intent to change his residence or
domicil.

Additionally, this conclusion comports with the aim to be
accomplished by the Legislature. *Prudential Ins. Co. v.
Boston,* 369 Mass. 542, 546 (1976). General Laws c. 106,
§ 9-103 (2) (*b*), as appearing in St. 1979, c. 512, § 7,
eliminated the earlier version of G. L. c. 106, § 9-103 (4).[6]
Courts had interpreted § 9-103 (4) as granting "priority to a
lien holder whose lien was perfected by indication on the
certificate of title regardless of where the automobile may
have been taken and regardless of the period of time it re-
mained in another jurisdiction." *In re Hartberg,* 25 U.C.C.
Rep. Serv. 1429, 1432 (E.D. Wis. 1979). Courts found that
§ 9-103 (4) superseded the four-month rule contained in the
earlier version of § 9-103 (3)[7] when motor vehicles covered
by certificates of title were involved. See *In re Foster,* 445
F. Supp. 949, 956 (N.D. Okla. 1978), and cases cited.

This interpretation resulted in decisions which held that
the lien of a secured creditor prevailed over a trustee in
bankruptcy, *In re Maxwell,* 18 U.C.C. Rep. Serv. 504, 506
(D. Conn. 1975), and over a bona fide purchaser who relied
upon a "clean" certificate of title issued by another State.

---

[6] General Laws c. 106, § 9-103(4), inserted by St. 1957, c. 765, § 1, and
amended by St. 1963, c. 188, § 21, provided: "Notwithstanding subsec-
tions (2) and (3), if personal property is covered by a certificate of title
issued under a statute of this state or any other jurisdiction which requires
indication on a certificate of title of any security interest in the property as
a condition of perfection, then the perfection is governed by the law of the
jurisdiction which issued the certificate."

[7] The pertinent portion of G. L. c. 106, § 9-103 (3), inserted by St.
1957, c. 765, § 1, provided: "If the security interest was already
perfected under the law of the jurisdiction where the property was when
the security interest attached and before being brought into this state, the
security interest continues perfected in this state for four months and also
thereafter if within the four-month period it is perfected in this state."

See *In re Hartberg, supra* at 1432-1433. This result was the subject of much criticism. See Meyers, Multi-State Motor Vehicle Transactions Under the Uniform Commercial Code: An Update, 30 Okla. L. Rev. 834, 854-857 (1977); Note, Interstate Movement of Motor Vehicles Subject to Security Interests: A Case for Repealing UCC § 9-103 (4), 54 Cornell L. Rev. 610, 621-623 (1969).

To correct these inequities, the official drafters of the Uniform Commercial Code revised § 9-103 in 1972. We adopted this revision in 1979. G. L. c. 106, § 9-103(2), as appearing in St. 1979, c. 512, § 7. This amendment deleted subsection (4) entirely and replaced the provisions with the current version of § 9-103 (2) (*b*). Comment 4 (c) of the Official Comments to § 9-103 explains the reasoning behind the inclusion of reregistration as a triggering event. "Since the secured party ordinarily holds the certificate, surrender thereof could not occur without his action in the matter in some respect. If the vehicle is reregistered in another jurisdiction while the secured party still holds the certificate, a danger of deception to third parties arises." "This certainly suggests to the Court an intent on the part of the drafters to do away with the potential for injustice to third parties" through the addition of the time and event limitations on perfection in the removal state. *In re Howard*, 9 Bankr. 957, 961 (N.D.N.Y. 1981).

The reregistration is the key, triggering event because when combined with removal, it may cause deception to innocent third parties. The nature of the removal is inconsequential, because the deception will occur regardless of whether the removal is of a permanent or temporary nature. Therefore, we conclude that the lapse of perfection occurs automatically when these two factors, i.e., change of location for over four months and reregistration, occur. The owner's intent to change his domicil is not controlling. See *Matter of Hrbek*, 18 Bankr. 631, 633 (D. Neb. 1982); *In re Howard, supra* at 961; *In re Brannan*, 5 Bankr. 505, 508 (D. St. Thomas and St. John 1980); *In re Hartberg, supra* at 1434.

Rockland contends that if we apply the four-month rule to a winter vacationer, we would create commercial havoc and impose a heavy burden on the creditor to reperfect whenever the owner left for and returned from his vacation. We also note that this interpretation may place the creditor in a difficult position because of its inability to force debtors to obtain a new certificate of title in the removal State.

Comment 4 (e)[8] of the Official Comments to § 9-103 reveals that the drafters recognized the creditor's dilemma but still chose to enact the amendments. This suggests a consumer oriented approach and demonstrates an intent "to limit the period of perfection in multiple state transactions even though it may sometimes create difficulty for the creditor." *In re Howard, supra* at 962. See Rohner, Autos, Title Certificates and UCC 9-103: The Draftsmen Try Again, 27 Bus. Law 1177, 1193 (1972).

Rockland alternatively argues that even if we find that the word "removed" does not connote a domiciliary change, its security interest was perfected at the time of the seizure and distraint because the Massachusetts motor vehicle certificate of title automatically reestablished Rockland's lien when the vehicle was returned to Massachusetts. However, Rockland fails to cite any authority to support this position. Moreover, we find that G. L. c. 90D, § 21, requires a contrary result because it states that the perfection of a security interest is controlled by G. L. c. 106, § 9-103. According to G. L. c. 106, § 9-103 (2) (b), once the vehicle is removed for four months and reregistration has occurred, the original certificate of title ceases to control. Comment 4 (c) of the

---

[8] Comment 4 (e) states: "One difficulty is that no state's certificate of title law makes any provision by which a foreign security interest may be reperfected in that state, without the cooperation of the owner or other person holding the certificate in temporarily surrendering the certificate. But that cooperation is not likely to be forthcoming from an owner who wrongfully procured the issuance of a new certificate not showing the out-of-state security interest, or from a local secured party finding himself in a priority contest with the out-of-state secured party. The only solution for the out-of-state secured party under present certificate of title laws seems to be to reperfect by possession, i.e., by repossessing the goods."

Official Comments to § 9-103. See *Matter of Hrbek, supra* at 633. Once the certificate of title ceases to control, reperfection through issuance of a new certificate of title is required. For these reasons, Rockland's security interest was unperfected at the time of the seizure and distraint.

2. *Priority status of the city's lien.* Pursuant to G. L. c. 106, § 9-301 (1) (*b*), an unperfected security interest is subordinate to the rights of "a person who becomes a lien creditor before the security interest is perfected." The city claims that when it levied against the motorhome through seizure and distraint, it became a lien creditor with rights superior to Rockland's unperfected security interest. Rockland challenges this assertion on three grounds: (1) the city's failure to procure a court warrant to distrain or commit prior to the seizure causes the levy to fail; (2) taxes are not liens upon personal property unless expressly made so by statute; and (3) the city could not become a lien creditor because it had knowledge of the bank's security interest. We disagree with Rockland's reasoning and hold that the city acquired the status of a lien creditor through seizure and a superior right in the motorhome. G. L. c. 106, § 9-301 (1) (*b*).

General Laws c. 106, § 9-301 (3), defines a lien creditor as a "creditor who has acquired a lien on the property involved by attachment, levy or the like." "The very definition of a lien is, a right to hold goods, the property of another, in security for some debt, duty or other obligation." *Arnold v. Delano,* 4 Cush. 33, 38 (1849). See *Wright v. Morley,* 150 Mass. 513, 515 (1890). Therefore, if the levy by seizure and distraint was valid pursuant to G. L. c. 60, §§ 24 and 29, with respect to Rockland's security interest, the city became a lien creditor at the time of the levy by distraint.

The trial judge held that the "failure by the [city] to comply with the provisions of G. L. c. 60, secs. 24 and 29 in not obtaining a warrant from the court to distrain rendered the seizure and distraint on September 4, 1980 invalid." Implicit in this conclusion is a finding that Rockland had standing to challenge the validity of the seizure and dis-

traint. We do not agree and we conclude that Rockland had no standing to challenge the city's actions.

The statutory scheme found in G. L. c. 60, §§ 24 and 29, governs the seizure and distraint of a taxpayer's personal property to satisfy overdue taxes. The city must obtain a warrant to collect issued by the collector and a warrant to distrain or commit issued by a court, before a collector may seize the taxpayer's property in satisfaction of overdue taxes. A court, before issuing a warrant to distrain or commit, must find that the taxpayer has sufficient property and an ability to pay. G. L. c. 60, §§ 24 and 29, as amended by St. 1980, c. 64, §§ 2 and 4. The parties have stipulated that the city collector failed to obtain the requisite court warrant to distrain or commit. It is this error which lead the trial judge to declare that the seizure and distraint were invalid.

Although the city did not comply with the statutory provisions, Rockland had no standing to request a declaration that the seizure and distraint were invalid. In a declaratory judgment action pursuant to G. L. c. 231A, "[a] party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred." *Massachusetts Ass'n of Indep. Ins. Agents and Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977). Thus we must investigate whether Rockland's injury is within the area of concern of the statute. General Laws c. 60, § 29, provides preseizure notice and an opportunity to be heard to the "person [who] refuses or neglects to pay his tax." The statute makes no similar provisions for a secured creditor. Moreover, one reason for the legislative amendment to G. L. c. 60, § 29, by St. 1980, c. 64, § 4, providing taxpayers with preseizure notice and an opportunity to be heard, was to prevent the oppressive exercise of the collector's enforcement powers through summary imprisonment of the tax delinquent. *Porter* v. *Treasurer & Collector of Taxes of Worcester*, 385 Mass. 335, 341 (1982).

Rockland's loss of its superior rights in the motorhome as a result of the city's actions is not within an area of concern

of the statute. First, the statute fails to provide Rockland with protected interests. Second, Rockland was not the subject of the past oppressive action; the Wattendorfs were. Therefore Rockland has no basis for challenging the city's failure to obtain court approval.

Rockland, in effect, raises the statutory rights[9] of the delinquent taxpayers to preseizure notice and an opportunity to be heard. Ordinarily, a party cannot rest his claims on the rights of third parties. *Barrows* v. *Jackson*, 346 U.S. 249, 255 (1953). *Klein* v. *Catalano*, 386 Mass. 701, 714 (1982). Moreover, Rockland's position does not fall within any of the exceptions to this general rule. First, Rockland's relationship to the taxpayers is not so close as to render Rockland an effective proponent of the taxpayer's interests. *Singleton* v. *Wulff*, 428 U.S. 106, 114-115 (1975). Second, the taxpayers, as original parties to this action, had every opportunity to raise this issue at the trial. *Id.* at 116. Rockland has no standing to challenge the validity of the seizure on this basis.

Rockland's claim that taxes cannot become a lien on personal property unless expressly made so by statute, while technically correct, is not applicable in the instant case. This rule refers to automatic liens imposed by the mere assessment of taxes as in the case of real estate taxes. See G. L. c. 60, § 37. See also *United States* v. *Pittsfield*, 302 F. Supp. 316, 318 (N.D. Me. 1969). However, taxes become a lien upon personal property once distraint is made. *United States* v. *Pittsfield, supra. Richmond* v.

---

[9] The city characterizes the preseizure notice and hearing requirements as constitutional due process rights embodied in G. L. c. 60, § 29. It is unclear from the legislative history what motivated the Legislature to enact the amendment to G. L. c. 60, § 29. *Porter* v. *Treasurer & Collector of Taxes of Worcester, supra* at 341. Furthermore, the Legislature amended this statute before final judgment was entered at the trial level in the *Porter* case. The trial judge had declared unconstitutional that section of G. L. c. 60, § 29, which authorized tax collection by imprisonment without notice and an opportunity to be heard. *Id.* Therefore, the legislative requirement that notice and an opportunity to be heard be afforded a taxpayer prior to seizure of the taxpayer's property is not necessarily a constitutional right embodied in G. L. c. 60, § 29.

*Bird,* 249 U.S. 174, 175 (1919). In the instant case, distraint has occurred. The seizure and distraint were valid with respect to the secured creditor; therefore, the city acquired a valid lien by levying against the motorhome. *Wright* v. *Morley,* 150 Mass. 513, 515 (1890).

Rockland also attacks G. L. c. 60, §§ 24 and 29, as unconstitutional under both State and Federal law because the statute fails to provide a secured creditor with reasonable notice and an opportunity to be heard prior to the seizure. Rockland asserts that this omission deprives it of a property right without due process of the law. The weakness of Rockland's position is that this issue was never raised at the trial level. Rockland did not request a declaration of the statute's unconstitutionality as applied to a secured creditor in its counterclaim. The trial judge addressed only the due process rights of a taxpayer allegedly embodied in G. L. c. 60, §§ 24 and 29, when he declared the seizure invalid. Therefore, we are not obliged to address this issue on appeal.[10] *Royal Indemn. Co.* v. *Blakely,* 372 Mass. 86, 87 (1977).

Rockland's final contention is that the city is not a valid lien creditor because it had knowledge of Rockland's security interest. Rockland did not raise this issue below, nor did the trial judge address it. Furthermore, Rockland fails to indicate the authority upon which it bases this assertion. It merely cites to G. L. c. 106, § 9-301 (4), which is not relevant. Section 9-301 (4) deals with "the extent to which

---

[10] Rockland has not cited any cases in which a secured creditor has successfully asserted a deprivation of due process because it was not afforded reasonable notice and an opportunity to be heard prior to the seizure of the secured property. In fact our investigation has revealed a contrary view. See *Antonoff* v. *Denver,* 195 Colo. 227, 229 (1978) (nonpossessory secured creditor unsuccessfully asserted a deprivation of due process due to lack of preseizure hearing). See also *Phillips* v. *Commissioner,* 283 U.S. 589, 596-597 (1931) (collection of taxes through summary administrative proceedings constitutional if adequate opportunity is afforded for a later determination of legal rights); *Haverhill Manor, Inc.* v. *Commissioner of Pub. Welfare,* 368 Mass. 15, 25, cert. denied, 423 U.S. 929 (1975).

advances made under a perfected security interest after the rights of a lien creditor have attached to the collateral will come ahead of the position of the lien creditor." Official Reasons for 1972 Change, Mass. Ann. Laws c. 106, § 9-301 (1983 Supp.). Certainly the "knowledge" provisions contained in this section bear no relation to the present situation. For these reasons we decline to address this issue for the first time on appeal. *Albert* v. *Municipal Court of the City of Boston,* 388 Mass. 491, 493-494 (1983).

Therefore, we reverse the trial judge's determinations that Rockland maintained a perfected security interest and that the city's seizure and distraint were invalid. We order that judgment for the city be entered accordingly.

*So ordered.*