BANKBOSTON, N.A.,[1] Appellant,

v.

John O. DESMOND, Trustee in Bankruptcy of Ivelise C. Gutierrez, Appellee.

Civ.A. No. 00–11333–WGY.

United States District Court, D. Massachusetts.

Dec. 12, 2000.

John O. Desmond, Framingham, MA, pro se.

Matthew J. McGowan, Salter, McGowan, Swartz & Sylvia, Inc., Providence, RI, pro se.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

BankBoston, N.A. (the "Bank") appeals an order of the bankruptcy court declaring that it is not a secured creditor entitled to land.

1. After the advent of this case, BankBoston, N.A. became Sovereign Bank of New Eng-

relief from the automatic stay under 11 U.S.C. § 362(d) and denying its Motion for Evidentiary Hearing. In so ruling, the bankruptcy court allowed the Trustee to avoid the Bank's lien under 11 U.S.C. § 544(a)(1), essentially reducing the Bank's status to that of a general unsecured creditor. The Bank requests that this Court either reverse the bankruptcy court's decision or remand the case for an evidentiary hearing.

The question before the Court appears routine: Does a lien release notation on a certificate of title that remains in possession of the creditor invalidate perfection? It is, however, one of first impression in this circuit, with arguably far-reaching implications for commercial transactions.

Oral arguments were heard on September 13, 2000, at which time this Court made a preliminary order to remand the case to the bankruptcy court for an evidentiary hearing. The Bank requested the opportunity to submit stipulated facts and thereby eliminate the need for remand, and the Court agreed. The parties were given a one week window in which to submit facts. No stipulated facts were forthcoming, and consequently, the case is remanded.

## II. FACTUAL BACKGROUND

The story begins as a routine commercial transaction. In 1996, Ivelise Gutierrez (the "Debtor") borrowed money from the Bank to purchase a 1995 Toyota Corolla (the "Vehicle"). Appellant's Br. at 2. The Debtor granted a security interest in the Vehicle to the Bank. *Id.* The security interest was properly perfected by duly noting the lien on the face of the Certificate of Title (the "Title"). *Id.* at 2–3.

In January 1999, the Bank marked as released the Title to the Vehicle owned by the Debtor. There is some confusion about what prompted this peculiar event, but in their court papers, the parties appeared to have settled on an explanation. At oral arguments, however, it was clear that neither party could trace the exact sequence of events.[2]

The following rendition is not so much disputed as it is unconfirmed.

In January 1999, the Debtor traded in the Vehicle to buy a new car. To facilitate this transaction, the Bank released the lien and apparently sent the Title to the dealer, anticipating satisfaction of the lien once the transaction was complete. Debtor rescinded the purchase of the new car within the time allowed under Massachusetts law. Appellant's Br. at 4. Upon recission, the Title, with the lien release notation, was returned to the Bank. It is unclear whether the Debtor continued to make payments on the car between January 1999 and the petition date. In any event, the Title was never delivered to the Debtor, the Bank maintained possession of the Title, and no change in lienholder status was noted by the Registry of Motor Vehicles.

The Debtor filed for Chapter 7 on January 5, 2000. *Id.* at 2. As of the bankruptcy petition date, the Debtor owed the bank nearly $6,000 on the promissory note obligation. *Id.* at 3. Because the Debtor was in substantial default in her payment obligations, the Bank sought relief from the stay so it could repossess the Vehicle. *Id.* As part of its motion for relief, the Bank attached a copy of the Title. The Trustee spotted the release of lien notation and objected to the relief from stay on the ground that the Bank's lien was no longer perfected.

On April 13, 2000, the bankruptcy court conducted a preliminary (and non-evidentiary) hearing on the Bank's motion. *Id.* at 3–4. The court directed the Trustee to conduct a Registry of Motor Vehicle

---

**2.** Originally, the Bank believed the release had been performed in error and so informed the bankruptcy court. After the preliminary hearing, the bankruptcy court was informed by the Trustee that the release was signed as part of a trade-in transaction. The Bank can neither confirm nor deny this—the distinction, however, is important. The circumstances leading to the release may have a significant impact on the outcome.

search to determine if its records reflected the Bank's security interest. *Id.* at 4. As requested, the Trustee filed a supplemental response on April 24, 2000, in which he stated that the Registry of Motor Vehicles records did reflect the Bank as the current and only lienholder. The Bank requested an evidentiary hearing on the issue and time to brief the issues of law. Because the court determined that the issue was strictly legal, the request was denied. *In re Gutierrez,* No. 00–10070, slip op. at 4 (Bankr.D.Mass. May 15, 2000).

On May 15, 2000, the bankruptcy court issued an order ruling that the Bank's security interest was not perfected at the time the petition was filed. Attached to the order was a Memorandum outlining the court's reasoning that "because the exclusive method of perfection is a notation on the [Title], the Court infers that any additional notation on the certification that clouds the notation of the lien must jeopardize the lien." *Id.* at 5. As a result, the Bank lost its perfected status and essentially its security interest as well.

### III. DISCUSSION

#### A. Relevant Standard

■ A district court's standard of review when deciding an appeal from a bankruptcy court is governed by Fed. R.Bankr.P. 8013. Rule 8013 provides that the district court "may affirm, modify or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." While a district court must review conclusions of law de novo, *In re First Software Corp.,* 97 B.R. 711, 713 (D.Mass.1988) (Wolf, J.), "findings of fact … shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed.R.Bankr.P. 8013.

■ Because the case before the Court involves statutory interpretation, the bankruptcy court's decision will be reviewed de novo.

#### B. Analysis

■ A trustee in bankruptcy has, as of the commencement of the case, the status of a hypothetical lien creditor and is empowered to avoid any transfer of property of the debtor that could be avoided by such a creditor. 11 U.S.C. § 544(a). Once the trustee has assumed the status of a hypothetical lien creditor, state law is used to determine whether a security interest in a motor vehicle has been perfected against the trustee. *In re Landry,* 165 B.R. 738, 739 (Bankr.D.Mass.1994) (*"Landry"*).

■ The perfection of a security interest in a motor vehicle is governed by Mass. Gen.Laws ch. 106, the Uniform Commercial Code, and Mass.Gen.Laws ch. 90D, the Motor Vehicle Certificate of Title Act. Sections 9–302(3) and 9–302(4) of the Uniform Commercial Code in Massachusetts refer a creditor seeking to perfect an interest in a motor vehicle to chapter 90D. Chapter 90D provides that:

> A security interest in a vehicle for which a certificate of title is issued under this chapter is perfected by the delivery to the registrar of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the delivery is completed within ten days thereafter, otherwise, as of the time of delivery.

Mass.Gen.Laws ch. 90D, § 21. The Supreme Judicial Court has clearly stated that "the exclusive method of perfecting a security interest in a motor vehicle is through notation of the lien on a valid certificate of title." *City of Boston v. Rockland Trust Co.,* 391 Mass. 48, 51, 460 N.E.2d 1269 (1984) (*"Rockland"*).

It is undisputed that prior to January 1999 the Bank had a valid perfected security interest in the Vehicle. The question presented to the bankruptcy court and ultimately to this Court is what effect, if any,

did the lien release notation have on the Bank's status as a perfected secured creditor. This particular factual scenario is a case of first impression.

Unfortunately, there is no real guidance on this issue in Massachusetts. While *Rockland* declared that the exclusive method of perfecting a security interest is through a notation on the title, the case interpreted Mass.Gen.Laws ch. 106, § 9–103(2)(b). *Id.* As there was no dispute that the title had a lien notation, the court was neither required nor asked to interpret chapter 90D. The question presented was whether perfection was still valid after the vehicle had been removed from the state for over four months. *Id.* Thus, *Rockland's* value is limited in this context.

In *Landry,* the title failed to list the lienholder at all. *Landry,* 165 B.R. at 739. There, the secured party had submitted a title application but failed to list the date of the lien on the title application as required by statute. *Id.* Consequently, the Registry of Motor Vehicles issued the title without listing the bank as lienholder. *Id.* The court, relying on *Rockland,* concluded that the absence of the notation meant that perfection did not occur. *Id.* at 740.

Despite their obvious limitations, the Trustee would have this Court read these cases as dispositive of the issue at hand. The Trustee thus interprets chapter 90D, section 21 as clearly stating how to perfect a security interest in a motor vehicle, and section 26 as providing that this is the exclusive means to do so. In other words, a creditor may not argue that it holds a perfected security interest in a titled motor vehicle by filing a UCC–1 financing statement—an alternative method of perfecting a security interest in an item of personal property. *Rockland* and *Landry* make no earth-shattering pronouncements, however; both simply reproduce the plain language of the statute.

While a notation on the certificate of title is enough to *establish* perfection, the question remains whether a release of lien notation is enough to *invalidate* perfection.

Not unreasonably, the bankruptcy court decided in the affirmative, concluding that "because the exclusive method of perfection is a notation on the certificate . . . any additional notation on the certificate that clouds the notation of the lien must jeopardize the lien." *Gutierrez,* slip op. at 5. Because the court considered the notation dispositive, it did not conduct an evidentiary hearing as to the circumstances surrounding the release.

The Bank attacks this conclusion and its reasoning. According to the Bank, the court blurred the distinction between perfection and release of a lien in its analysis. The Bank argues that a correct analysis of this problem requires a court to examine chapter 90D, section 24, which provides that:

> Upon the satisfaction of a security interest in a vehicle for which the certificate of title is in the possession of the lienholder, the lienholder shall, within three days after demand and, in any event, within ten days, execute a release of his security interest . . . and mail or deliver the certificate and release to the next lienholder named therein, or, if none, to the owner or any person who delivers to the lienholder an authorization from the owner to receive the certificate.

Mass.Gen.Laws ch. 90D, § 24. The Bank contends that "a simple, sensible, and straight-forward reading of the law is that one who complied with the exclusive method of perfection set out in § 21 has a perfected security interest . . . unless and until such a security interest is released in accordance with the provisions of § 24." Appellant's Reply at 4. This is an interesting, and not unreasonable, argument. It has support in case law. *See In re Cavalieri,* 142 B.R. 710, 718 (Bankr. E.D.Pa.1992) (noting that Pennsylvania law requires a lien release notation and delivery to owner for effective release); *Southtrust Bank of Ala. v. Toffel (In re Blackerby),* 53 B.R. 649, 653 (Bankr. S.D.Ala.1985) (ruling that the lien was not

effectively released until delivery to the next lienholder or the owner); *In re Office Mach. Exch., Inc.,* 47 B.R. 644, 647 (Bankr.S.D.Ill.1985) ("[M]ere execution of a the release portion on the certificate of title is insufficient to effectuate a release where there is no satisfaction of the security interest."); *Smith & West Construction, Inc. v. Security Bank of Coos County (In re Lansdowne),* 28 B.R. 682, 684 (Bankr. D.Or.1983) (mere signature on the title is insufficient to invalidate bank's interest).

■ In Massachusetts, a certificate of title is prima facie evidence of the facts appearing on it. Mass.Gen.Laws ch. 90, 10(d). In this case, the release of lien notation on the Title places the burden of production upon the opponent, here the Bank. *Universal C.I.T. Credit Corp. v. Ingel,* 347 Mass. 119, 125, 196 N.E.2d 847 (1964). Indeed, in the absence of contradictory evidence, the unrebutted prima facie evidence compels a finding for the proponent. *Pahigian v. Manufacturers' Life Ins. Co.,* 349 Mass. 78, 85, 206 N.E.2d 660 (1965). Even so, unlike a conclusive evidentiary relationship, *see* 19 William G. Young, John R. Pollets & Christopher Poreda, *Massachusetts Practice: Evidence* § 301.8, at 126 (1998), the release of lien notation on the Title is not irrebuttable. This means that the opponent—here the Bank—ought at least be given an opportunity to present contradictory evidence.

This evidentiary model makes good sense in the context of routine and repetitive commercial transactions. A dry reading of the statute without the factual overlay may ignore practical considerations underlying modern commercial transactions. If, as the Bank argues, it is standard practice to release the lien and deliver it to a neutral third party—presumably a dealer or another creditor—as part of a trade-in transaction in anticipation of satisfaction of the loan, then the bankruptcy court's reading of the statute may possibly impede commercial transactions contrary to the intent of the Massachusetts legislature.

At the very least, however, this case of first impression ought be resolved only upon a complete evidentiary record and full opportunity for briefing and consideration of the views of *amici curiae,* if any. The place for such a hearing is the bankruptcy court. The Court need not—and does not—express any opinion upon the outcome of such further proceedings. To do so would be premature.

## IV. CONCLUSION

Accordingly, this case is REMANDED for an evidentiary hearing on the circumstances leading to the lien release. [docket no. 5].