NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13845

HELEN BANEVICIUS, trustee,[1] & others[2]  vs.  TOWN OF BARNSTABLE & another.[3]


Barnstable.    February 4, 2026. – May 20, 2026.

Present:  Budd, C.J., Gaziano, Wendlandt, Georges, Dewar, & Wolohojian, JJ.


Real Property, Agricultural or horticultural use, Sale, Right of first refusal. Practice, Civil, Standing, Declaratory proceeding, Action in nature of mandamus, Summary judgment. Declaratory Relief. Mandamus. Notice. Municipal Corporations, Notice to municipality.

---

[1] Of the Banevicius Revocable Living Trust.

[2] Ronald F. Knight; Linda H. Knight; Robert A. LaBerge; Ellen T. LaBerge; Keith W. McAteer and Sheila D. McAteer, trustees of the Sheila D. McAteer 2018 Trust; John E. Murphy, Jr., and Nancy E. Murphy, trustees of the 2 Longfellow Drive Realty Trust; Hildegarde B.E. Paris and Andrea M. Goode, trustees of the Hildegarde B.E. Paris & Andrea M. Goode Revocable Trust; Matthew J. Dupuy; Cathleen Foley-Dupuy; Linda J. Powers; Craig Frank Valenti and Barbara Russell Valenti, trustees of the Craig F. and B.R. Valenti Joint Living Trust; Robert L. Ward and Carol M. Ward, trustees of the Robert L. & Carol M. Ward 2016 Living Trust; Amoret B. Zamarro; Paul A. Zamarro; and Friends of the Centerville Cranberry Bog Preservation, Inc.

[3] Bog Partners LLC.

Civil action commenced in the Superior Court Department on July 13, 2022.

The case was heard by Michael K. Callan, J., and Thomas J. Perrino, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


Charles M. Sabatt (Matthew J. Dupuy & Robert A. LaBerge also present) for the plaintiffs.
Allison M. Cogliano, Assistant Town Attorney, for town of Barnstable.
Matthew T. McLaughlin (Aaron F. Nadich also present) for Bog Partners LLC.


GAZIANO, J.  This case arises from a dispute over the sale of twenty-one acres of land located in Centerville, known locally as the "Jenkins Bog" (bog).  Susan L. Jenkins, in her capacity as trustee of the Jenkins Nominee Trust, previously held title to the bog.  Since 1995, the land had been actively farmed as a cranberry bog -- which the town of Barnstable (town) recognized as a "horticultural use" for property tax purposes pursuant to G. L. c. 61A, commonly referred to as the Agricultural Classification Act.  In March 2021, Jenkins provided the town manager with notice pursuant to G. L. c. 61A, § 14, that she intended to sell the bog to Samuel Slater, who planned to discontinue its horticultural use.  However, Jenkins did not provide notice to several other municipal entities as required by the statute.  See G. L. c. 61A, § 14, eighth par.

She sold the bog anyway, and transferred title to the bog to Bog Partners LLC (Bog Partners), which Slater owns and manages.

After learning of the sale, the individual plaintiffs, who own property abutting the bog, and a nonprofit corporation formed to preserve the bog commenced an action in the Superior Court against the town and Bog Partners.[4] The plaintiffs sought declaratory relief, as well as relief in the nature of mandamus, arguing that the sale was invalid because Jenkins and Bog Partners did not comply with G. L. c. 61A's notice requirements. The town and Bog Partners each filed a motion for summary judgment, contending that the plaintiffs lacked standing to pursue their claims. Both motions were allowed, with two different Superior Court judges concluding that the plaintiffs lacked standing. The plaintiffs appealed, and we transferred the appeal to this court on our own motion. We now affirm on the grounds that the plaintiffs lack standing to seek a declaratory judgment and that mandamus relief is improper.

Background. 1. Statutory framework. We begin with a brief overview of the relevant provisions of G. L. c. 61A to provide context for the factual background of this case. For

---

[4] Jenkins was originally named as a defendant; however, the parties subsequently stipulated to dismissal, without prejudice, of the claim against her.

further discussion of G. L. c. 61A, see Sudbury v. Scott, 439 Mass. 288, 293-296 (2003).

General Laws c. 61A establishes property tax benefits for owners of qualifying land used for agricultural or horticultural purposes. In exchange for providing these benefits, the municipality where the land is located receives "a first refusal option to meet a bona fide offer to purchase the land," G. L. c. 61A, § 14, twelfth par., if the owner intends to sell the land for a residential, commercial, or industrial use.

Before selling land subject to G. L. c. 61A, the landowner is required to provide notice of his or her intent to sell, which must be sent "to the mayor and city council of a city, or board of selectmen of a town, and in the case of either a city or a town, to its board of assessors, to its planning board and conservation commission, if any, and to the [S]tate forester." G. L. c. 61A, § 14, eighth par. In the event that the landowner's notice "does not contain all of the material described [in G. L. c. 61A, § 14]," the municipality has thirty days to "notify the landowner in writing that [the] notice is insufficient and does not comply." G. L. c. 61A, § 14, eleventh par. Otherwise, upon receiving proper notice, the municipality has 120 days to exercise its first refusal option. G. L. c. 61A, § 14, twelfth par.

2.  Facts.  We summarize the undisputed facts from the summary judgment record, viewed in the light most favorable to the plaintiffs, against whom summary judgment entered.  See 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 699 (2012).

Beginning in 1995, the trustee of the Jenkins Nominee Trust held title to the bog, which is comprised of four parcels of land spanning approximately twenty-one acres.  Jenkins began to serve as trustee of the Jenkins Nominee Trust in 2018.  She maintained and farmed the property as a cranberry bog, which was deemed a horticultural use for purposes of G. L. c. 61A.  The town assessed taxes on the bog in accordance with its horticultural use under G. L. c. 61A.

In February 2021, Jenkins entered into a purchase and sale agreement to sell the bog to Slater.  Slater owns and manages Bog Partners, which he formed to "manage, develop, improve, maintain, operate, lease, finance and refinance, sell, and otherwise deal with certain real property and improvements."

On March 9, 2021, Jenkins's counsel sent a certified letter to the town manager, Mark S. Ells, and town attorney, Karen L. Nober.  Enclosed with the letter was a copy of the purchase and sale agreement, along with a "Notice of Intention to Sell and Convert" (notice of intent), which indicated that Jenkins had entered into the purchase and sale agreement to sell the bog to

Slater, who intended to discontinue the bog's horticultural use and to convert the bog for residential use. The letter did not state whether notice was also sent to the town council, board of assessors, planning board, conservation commission (commission), or State forester. Ells responded to the letter on April 1, 2021, stating that "[a]fter internal discussion and review," the town had decided not to exercise its first refusal option to purchase the bog under G. L. c. 61A and approved of the bog's sale.

On July 14, 2021, Jenkins executed a deed conveying title to the bog to Bog Partners. Bog Partners then filed a request for determination of applicability with the commission, asking whether the erection of a fence on the bog would be subject to the Wetlands Protection Act, G. L. c. 131, § 40. Notice of this request was provided to owners of real property located within one hundred feet of the proposed fence, including many of the individual plaintiffs. This was the first time the individual plaintiffs learned that Jenkins had conveyed the bog to Bog Partners.

Plaintiff Ellen T. LaBerge made a public records request to the town in August 2021, seeking the notice of intent that Jenkins should have sent to the commission pursuant to G. L. c. 61A. The commission responded that it "[did] not have a copy of the document." Following the commission's response, LaBerge

made another public records request to the town, seeking documents submitted to the town in connection with the proposed sale of the bog.  The town's response included a copy of the March 9, 2021, letter and notice of intent sent to Ells from Jenkins's counsel.

Several individual plaintiffs attended two public meetings with town officials in October 2021 regarding the bog's sale. At the second meeting, Nober acknowledged that Jenkins had not strictly complied with G. L. c. 61A's notice provisions.  Nober agreed to inform Jenkins and Bog Partners that the transaction would need to be renoticed to comply with those provisions.

In November 2021, Nober and Jenkins's counsel exchanged letters concerning the notice issue.  Nober first sent a letter to Jenkins's counsel, advising that Jenkins had not complied with "the notice requirements of Chapter 61A" and requesting that Jenkins comply.  Jenkins's counsel responded, noting that the town had not, within thirty days of receiving the March 9 notice, notified Jenkins in writing that the notice was insufficient as required by G. L. c. 61A.  Therefore, with Jenkins having completed the sale in reliance on the fact that the town did not timely object, her counsel contended that the notice requirements were "of no further consequence or effect." In her reply, Nober maintained that the thirty-day deadline under G. L. c. 61A, § 14, eleventh par., was inapplicable, as

the issue was not that the content of the March 9 notice was deficient, but rather that the notice was not sent to town council, the board of assessors, the planning board, or the commission.  Further, Nober contended that because Jenkins did not comply with G. L. c. 61A's notice requirement, Bog Partners's title was "defective and defeasible."  Accordingly, Nober renewed the town's request for Jenkins to "comply with [G. L. c. 61A's notice] requirements."  Jenkins did not issue any notice to the municipal entities as requested.

In December 2021, some of the individual plaintiffs and other nonparties formed the nonprofit corporation Friends of the Centerville Cranberry Bog Preservation, Inc. (Friends nonprofit).  The stated purpose of the Friends nonprofit is to "preserve, protect, and maintain, . . . the 'Jenkins Bog' . . . as an accessible, natural open space and resource for public recreation, education, and enjoyment and for the benefit of indigenous wildlife and vegetation."

In May 2022, officers of the Friends nonprofit and two of the individual plaintiffs met with Ells, Nober, and the town's senior counsel to discuss the sale of the bog.  The town's senior counsel indicated that the town would not support pursuing the matter further unless the Friends nonprofit could confirm that sufficient funds were available to purchase the bog.  The following week, the Friends nonprofit and the

Barnstable Land Trust, a private nonprofit organization interested in acquiring the bog for open space protection and wetland restoration, sent letters assuring the town that sufficient funds were available to purchase the bog. However, the town took no further action with respect to the bog.

3. <u>Procedural history</u>. On July 13, 2022, the plaintiffs commenced an action against the town, Jenkins, and Bog Partners in the Superior Court. The plaintiffs amended their complaint on September 1, 2022. In their amended complaint, the plaintiffs sought a judgment declaring that the sale of the bog was invalid because Jenkins had failed to comply with G. L. c. 61A, § 14, and that title to the bog must therefore vest in Jenkins. Additionally, the plaintiffs sought relief in the nature of mandamus; specifically, an order directing the town to require Jenkins and Bog Partners to "compl[y] strictly with the notice provisions set forth in [G. L. c.] 61A, § 14."

In May 2023, the town moved for summary judgment, arguing that the plaintiffs lacked standing to pursue their claims and that, as to the claim for mandamus relief, the town could not be directed to undertake a different act from what it had already taken. Two months later, Bog Partners moved for summary judgment, also on the basis that the plaintiffs lacked standing.

On August 14, 2023, a Superior Court judge allowed the town's summary judgment motion, reasoning that the plaintiffs

lacked standing.  For the same reason, a different Superior Court judge allowed Bog Partners's motion on January 10, 2024.  Judgments were entered in favor of the town and Bog Partners as to the respective claims against them.  The plaintiffs timely appealed, and we transferred the appeal to this court on our own motion.

Discussion.  We review decisions granting motions for summary judgment de novo.  See 81 Spooner Rd., LLC, 461 Mass. at 699.  "Viewing the evidence in the light most favorable to the party against whom summary judgment entered, [s]ummary judgment is appropriate where there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law" (quotations and citations omitted).  Metcalf v. BSC Group, Inc., 492 Mass. 676, 681 (2023).  See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).

This appeal raises two issues.  Specifically, we must determine (1) whether the plaintiffs have standing to assert their claim under the declaratory judgment statute, G. L. c. 231A, and (2) whether the plaintiffs' claim for relief in the nature of mandamus under G. L. c. 249, § 5, is proper.  We address each issue in turn.

1.  Declaratory judgment.  "Although the standing requirements under G. L. c. 231A should be liberally construed, there are limits to the matters that can be heard in an action

for a declaratory judgment."  Enos v. Secretary of Envtl.
Affairs, 432 Mass. 132, 141 (2000).  The declaratory judgment
statute "does not provide an independent statutory basis for
standing" (citation omitted).  Sudbury v. Massachusetts Bay
Transp. Auth., 485 Mass. 774, 779 (2020).  Instead, a plaintiff
has standing under G. L. c. 231A where the defendant has
"violated some duty owed to the plaintiff" (citation omitted),
Enos, supra at 135, and where the plaintiff has alleged an
injury "within the area of concern of the statute or regulatory
scheme under which the injurious action has occurred" (citation
omitted), Sullivan v. Chief Justice for Admin. & Mgt. of the
Trial Court, 448 Mass. 15, 21-22 (2006).  See Enos, supra
(plaintiffs' injuries must be within statute's "zone of
interests" [citation omitted]).  As we outlined in Enos, whether
a plaintiff's alleged injury falls within a statute's area of
concern depends on a number of factors, including "the language
of the statute [at] issue; the Legislature's intent and purpose
in enacting the statute; the nature of the administrative
scheme; decisions on standing; any adverse effects that might
occur, if standing is recognized; and the availability of other,
more definite, remedies to the plaintiffs."  Id. at 135-136.

Here, the plaintiffs allege several injuries.
Specifically, they claim that conversion of the bog for
residential use will have an adverse impact on "the aesthetic

views, presence of wildlife, and peace and quiet afforded by the [b]og."  Additionally, they claim conversion will diminish the plaintiffs' "enjoyment of their own property, as well as its economic value."  For the reasons that follow, we conclude that these alleged injuries are insufficient to confer standing.

In determining whether the plaintiffs' injuries fall within G. L. c. 61A's zone of interests, we start with the first factor articulated in Enos, 432 Mass. at 135:  the statute's language. See Ten Persons of the Commonwealth v. Fellsway Dev. LLC, 460 Mass. 366, 381 (2011).  Under G. L. c. 61A, the parties entitled to receive a notice of intent are expressly limited to certain municipal officials and entities -- not owners of property abutting the land at issue or any other private parties claiming an alleged interest in that land.  See G. L. c. 61A, § 14, eighth par. (requiring notice "to the mayor and city council of a city, or board of selectmen of a town, and in the case of either a city or a town, to its board of assessors, to its planning board and conservation commission, if any, and to the [S]tate forester").  Cf. Boston v. Rockland Trust Co., 391 Mass. 48, 56-57 (1984) (secured creditor lacked standing to seek declaratory relief concerning city's seizure of property where no preseizure notice to secured creditor was required under statute governing seizure).  Further, nowhere does G. L. c. 61A expressly provide the plaintiffs with a private right of action

to challenge alleged violations of the notice requirements under G. L. c. 61A, § 14.[5]  Although declaratory relief may be sought "even if the relevant statute does not provide a private right of action," a plaintiff may not seek such relief "to effect an 'end run' around the absence of a private right of action where the Legislature intended to foreclose certain remedies." Service Employees Int'l Union, Local 509 v. Department of Mental Health, 469 Mass. 323, 335-336 (2014) (Service Employees).

Beyond the statutory language, we also look to G. L. c. 61A's history and purpose to discern the statute's area of concern.  See Massachusetts State Auto. Dealers Ass'n v. Tesla Motors MA, Inc., 469 Mass. 675, 684 n.14 (2014).

As we discussed in Scott, 439 Mass. at 299, because "[t]he Legislature was concerned with the rapidly decreasing number of farms in the Commonwealth during the 1940's and 1950's," it commissioned several studies to "explore ways to reverse this trend, including the assessment and taxation of agricultural lands at agricultural value."  Each study found that "real estate taxation contributed to the demise of farms, and that it

---

[5] Not only is an express private right of action absent from the statute, but we also do not infer one "in the absence of some indication from the Legislature supporting such an inference" (citation omitted).  Boston Med. Ctr. Corp. v. Secretary of the Executive Office of Health & Human Servs., 463 Mass. 447, 454 (2012).

was in the public interest to preserve and protect the Commonwealth's remaining farmland." Id. at 299-300.

As a result, G. L. c. 61A was enacted in 1973, see St. 1973, c. 1118, § 1, with the purpose of "preserv[ing] and protect[ing]" agricultural and horticultural land through municipal-level tax relief, Scott, 439 Mass. at 301. The municipal notice required for sale of such land ultimately serves this same purpose; specifically, it allows the "city or town" an opportunity to exercise its first refusal option, G. L. c. 61A, § 14, twelfth par., which in turn is meant to help "preserve and protect the agricultural [or horticultural] use of land," Scott, supra. In other words, the notice provision is designed to protect the interests of the municipality where the land is located -- not the interests of abutters or other private parties.

And further, the municipal interest animating this notice provision is the preservation of agricultural or horticultural land, not the preservation of abutting property value or interests. Cf. Standerwick v. Zoning Bd. of Appeals of Andover, 447 Mass. 20, 28-32 (2006) (claimed diminution in abutting property value was insufficient to confer standing under G. L. c. 40B, which was designed to promote affordable housing). Nor does that municipal interest necessarily encompass broader concerns regarding the nuisances, decreased recreational

activities, or environmental threats alleged by the plaintiffs in this case. Cf. Reilly v. Hopedale, 102 Mass. App. Ct. 367, 379 (2023) (town citizens' generalized interest in "protecting the environment" was not enough to confer standing under G. L. c. 61, which was designed to preserve and maintain forest land through reduced taxation); Hickey v. Conservation Comm'n of Dennis, 93 Mass. App. Ct. 655, 657-658 (2018) (plaintiffs' concern that proposed walkway would increase "offensive" recreational activity did not fall within interests protected by local wetlands bylaw).

Next, we consider case law on standing. See Enos, 432 Mass. at 135. Although we have not previously addressed the issue of standing to seek declaratory relief where an alleged violation of G. L. c. 61A has occurred, the Appeals Court's decision in Reilly is informative in this case. In Reilly, 102 Mass. App. Ct. at 379, the Appeals Court considered whether taxpayer plaintiffs had standing to pursue declaratory relief under a statute analogous to G. L. c. 61A -- G. L. c. 61, which establishes a "voluntary tax program by which landowners can agree to preserve and maintain forest land in order to receive advantageous tax treatment, in exchange for which the town receives certain rights should the land be transferred." Among these municipal rights, the town receives a first refusal option where an owner of forest land seeks to sell it for another use.

Id. at 370. The plaintiffs in Reilly sought a declaration that a town's agreement to waive its first refusal option was invalid. Id. at 369. After considering the legislative intent behind G. L. c. 61 -- "promoting and maintaining forest land" -- the Appeals Court determined that the plaintiff taxpayers lacked standing to pursue such a declaratory judgment. Id. at 379.

While the plaintiffs in Reilly were not identified as abutters, the Appeals Court's reasoning applies equally here. That is, just as "[i]ndividual taxpayers whose land is not subject to G. L. c. 61 have been given no rights under [that] statutory scheme," Reilly, 102 Mass. App. Ct. at 379, abutters have similarly been given no rights under G. L. c. 61A. Accordingly, and particularly given the similarities between the two statutory schemes, we find Reilly to be persuasive.

Finally, we consider any adverse effects that might occur if standing is recognized. See Enos, 432 Mass. at 135-136. This case presents one of the same concerns we expressed in Enos: a holding that the plaintiffs have standing here could turn G. L. c. 231A into a "roving entitlement" for abutters to bring suit, allowing any sale of land under G. L. c. 61A to be "unnecessarily delayed by lawsuits brought by landowners near the project seeking redress for injuries not within [G. L. c. 61A's] ambit." Id. at 141-142.

In light of the foregoing, we need not consider the availability of other remedies to the plaintiffs. See Enos, 432 Mass. at 135-136. Even to the extent that other remedies are unavailable, we are satisfied that the plaintiffs' claimed injuries nonetheless fall beyond G. L. c. 61A's zone of interests. See Revere v. Massachusetts Gaming Comm'n, 476 Mass. 591, 608 (2017) (concluding party lacked standing to pursue declaratory judgment claims, notwithstanding that party was effectively left with no avenue to challenge decision). Accordingly, we conclude that the plaintiffs lack standing to seek declaratory relief.[6]

The plaintiffs contend that this conclusion effectively leaves "no one" with standing to enforce the notice requirements under G. L. c. 61A.[7] They cite Service Employees, 469 Mass. at

_____

[6] This is true not only for the individual plaintiffs, but also for the Friends nonprofit. In order to have standing to bring suit on behalf of its members, an association must establish that "its members would otherwise have standing to sue in their own right" (citation omitted). Animal Legal Defense Fund, Inc. v. Fisheries & Wildlife Bd., 416 Mass. 635, 638 n.4 (1993). The Friends nonprofit's members include individual plaintiffs who, as discussed, do not have standing to pursue their claims. The Friends nonprofit does not explain how its nonparty members have standing, nor does it contend that it has direct standing. Contrast Service Employees, 469 Mass. at 337-338 & n.13 (holding that union had direct standing to pursue declaratory relief while declining to decide whether union had associational standing on behalf of its members).

[7] The individual plaintiffs also contend that a rebuttable presumption of standing should exist by virtue of their status as abutters, much like abutters under the Zoning Act, G. L.

337-338, where we concluded that a plaintiff had standing to pursue declaratory relief because, in part, "the Legislature could not have intended that the [law at issue] effectively be unenforceable." But that decision relied on considerations not present here. Service Employees concerned whether an employee union had standing to pursue a declaratory judgment challenging an agency's alleged violation of the so-called Pacheco Law, G. L. c. 7, §§ 52-55. Id. at 324. Examining the Pacheco Law's text and purpose, id. at 329-330, we found that the statute conferred "specific, substantive rights on employee organizations," id. at 330. We accordingly determined that the plaintiff union had standing to enforce these rights, where the "absence of declaratory relief would prevent the Pacheco Law from being administered properly and thus contravene the Legislature's intent." Id. at 336. By contrast, a determination that the plaintiffs lack standing here would not

---

c. 40A. See, e.g., Stone v. Zoning Bd. of Appeals of Northborough, 496 Mass. 366, 374 (2025); Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721 (1996). But the presumption of abutter standing in zoning actions is drawn from the specific text of G. L. c. 40A, § 15, which provides that "parties in interest" must be sent notice of hearings before and decisions by a zoning board of appeals. In turn, G. L. c. 40A, § 11, defines "[p]arties in interest" to include abutters. As we explained in Watros v. Greater Lynn Mental Health & Retardation Ass'n, 421 Mass. 106, 111 (1995), because abutters are therefore entitled to notice under these sections of the Zoning Act, they are presumed to have standing as persons "aggrieved" by a board's decision under G. L. c. 40A, § 17.

foreclose G. L. c. 61A from being administered properly -- the town could still administer the law by requiring compliance with the notice provisions of G. L. c. 61A, § 14. We therefore conclude that the plaintiffs lack standing to pursue a declaratory judgment.

2. <u>Mandamus relief</u>. Next, we consider whether relief in the nature of mandamus under G. L. c. 249, § 5, is proper.[8] General Laws c. 249, § 5, provides, in part, that a party may bring a civil action in the Superior Court "to obtain relief formerly available by writ of mandamus." Relief in the nature of mandamus may be used "to compel a public official to perform an act which the official has a legal duty to perform" (citation omitted). <u>Ardon</u> v. <u>Committee for Pub. Counsel Servs</u>., 464 Mass. 1001, 1001 (2012), cert. denied, 571 U.S. 872 (2013). But mandamus is an "extraordinary remedy," <u>Anzalone</u> v. <u>Administrative Office of the Trial Court</u>, 457 Mass. 647, 655 (2010), and "is not appropriate where the acts in question are discretionary rather than ministerial," <u>Boxford</u> v. <u>Massachusetts Highway Dep't</u>, 458 Mass. 596, 606 (2010).

---

[8] Because we conclude that relief in the nature of mandamus is not available here, we do not reach the plaintiffs' argument that they had standing to bring their claim under the "public right" doctrine. See <u>Bombardieri</u> v. <u>Registrar of Motor Vehicles</u>, 426 Mass. 371, 377 n.11 (1998).

Here, the plaintiffs seek a court order directing the town to require Jenkins to provide proper notice to all municipal entities listed in G. L. c. 61A, § 14, eighth par.  The plaintiffs argue that mandamus relief is appropriate because the town had a mandatory, nondiscretionary duty to alert Jenkins of deficiencies in her March 9, 2021, notice.  In support, they point to G. L. c. 61A, § 14, eleventh par., which provides that a municipality "shall" provide written notice of such deficiencies to a landowner.

Assuming, without deciding, that a municipality is obligated to "notify [a] landowner in writing that notice is insufficient and does not comply," G. L. c. 61A, § 14, eleventh par., the town fulfilled that obligation.  It is undisputed that, in November 2021, the town sent Jenkins's counsel two letters advising that the notice Jenkins provided on March 9, 2021, did not comply with G. L. c. 61A, § 14, and asking Jenkins to provide proper notice to all municipal entities.  Jenkins received and responded to the town's first letter, but ultimately did not send any further notice.

Because the town already alerted Jenkins of the deficient notice, relief in the nature of mandamus would be improper here.[9]

---

[9] On the issue of mandamus relief, the motion judges granted summary judgment on different grounds, which we do not reach. However, we are free to affirm on this alternate basis.  See,

"Mandamus is not an appropriate remedy to obtain a review of the decision of public officers who have acted and to command them to act in a new and different manner" (citation omitted). Boston Med. Ctr. Corp. v. Secretary of the Executive Office of Health & Human Servs., 463 Mass. 447, 470 (2012).  See Rines v. Justices of the Superior Court, 330 Mass. 368, 373 (1953) ("mandamus is a remedy for inaction and not available where action has already been taken").

The plaintiffs argue that since Jenkins never issued compliant notice to all municipal entities, the town was required to take additional steps to ensure Jenkins did so. However, we see nothing in the statute's language requiring the town to take steps beyond "notify[ing] the landowner in writing that notice is insufficient and does not comply."  G. L. c. 61A, § 14, eleventh par.  And we will not impose additional requirements on the town beyond those written in the statute. See Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 n.3 (1986) (court will construe language of statute as written and will not add statutory provision Legislature did not see fit to include).  Thus, any further steps the town could have taken

_____

e.g., Morton St. LLC v. Sheriff of Suffolk County, 453 Mass. 485, 490 (2009).

to require Jenkins to provide compliant notice were discretionary -- not mandatory.  See <u>Boxford</u>, 458 Mass. at 606 ("Relief in the nature of mandamus is not appropriate where the acts in question are discretionary . . .").  Accordingly, relief in the nature of mandamus does not lie here.

For the foregoing reasons, the defendants' motions for summary judgment were properly allowed.

<u>Judgments affirmed</u>.